UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

APR 25 2000

Michael [illegible]
Clerk of Court

FELIX CORONEL-CARDENAS            )
                                  )
v.                                )   C.A. No. B-00-058
                                  )
E.M. TROMINSKI, INS DISTRICT      )
    DIRECTOR, and                 )
Hon. JANET RENO, UNITED STATES    )
    ATTORNEY GENERAL.             )
_____)

PETITION FOR WRIT OF HABEAS CORPUS

Comes Felix Coronel-Cardenas, by and through the undersigned, and, pursuant to 28 U.S.C. §2241, files the instant Petition for Writ of Habeas Corpus, seeking relief from the Decisions of the Board of Immigration Appeals, (the "BIA"), dated February 7, 1991, June 3, 1993, and March 9, 2000, (Petitioner's Exhibits A, B and C, herein incorporated by reference), ordering that he be deported to Mexico.

I. THE FACTS AND PROCEDURAL HISTORY

1. Felix Coronel-Cardenas is a thirty-eight year-old, native and citizen of Mexico, who has resided continuously in this country since his admission as a lawful permanent resident on or about July 9, 1980. His wife and three children, (ages eight, thirteen, and twenty), are all U.S. citizens, four of his siblings are lawful permanent residents.

2. On April 29, 1983, Mr. Coronel was convicted in the 197th Judicial District Court for Cameron, County, Texas, of the offense of simple possession of marijuana, (between four ounces and five pounds), which offense was committed on or about January 21, 1983. For this offense, he was granted six years probation.

3. On or about April 17, 1987, an Order to Show Cause was issued, alleging deportability under (then) 8 U.S.C. §1251(a)(11), for conviction of a controlled substance violation. On May 18, 1987, a hearing was conducted, at which the Immigration Judge tricked him into waiving counsel, by leading him to believe that he was eligible for relief from deportation. The Judge advised him that he would be given a form to fill out, and that a hearing would be conducted later on the application. Believing that this meant that counsel was not necessary for the preliminary proceedings, Mr. Coronel then agreed to waive counsel. At that point, instead of giving him the opportunity to apply for relief, the Immigration Judge proceeded with the hearing, and ordered him deported. Mr. Colonel asserts that he was thereby improperly deprived of his right to counsel, and that this violated Due Process, in that he was substantially prejudiced thereby. [1]

4. Mr. Colonel appealed the decision, and requested that the case be remanded to permit him to apply for relief under (then) Section 212(c) of the Act. [2] In support thereof, he filed, *inter alia,* an affidavit from his wife, stating that she and their two children were U.S. citizens. In dismissing his appeal, and refusing to remand for a hearing on his 212(c) application, the BIA mentioned, but did not address, his claim that he was improperly denied the

---

[1] At the time the Judge ordered him deported, Mr. Colonel lacked a few weeks of eligibility for §212(c) relief. Had he not been led to believe that he was already eligible for relief, he would not have waived his right to counsel at what he believed was simply an initial hearing, and his eligibility would have ripened by the time the case was rescheduled for him to get counsel. Therefore, he was "prejudiced" by the deprivation of counsel.

[2] Thereafter, in July of 1987, Mr. Coronel was arrested for driving while intoxicated. As a result, in October of 1987, his probation was revoked, and he served thirty days in jail.

2

right to counsel, (and other procedural errors raised therein), and denied his motion to remand on the grounds that he had not made a *prima facie* case that he merited relief in the exercise of discretion, because he had not shown "unusual or outstanding" equities. In so doing, the Board erred procedurally, in that it made no attempt to analyze his equities to determine whether they rose to that level. It was also error in that such strong family ties in and of themselves constitute "outstanding" equities. *See, e.g., Matter of Arai*, 13 I&N Dec. 494,496 (BIA 1970) ("Where adverse factors are present in a given application, it may be necessary for the applicant to offset these by a showing of unusual or even outstanding equities. Generally, favorable factors such as family ties, hardship, length of residence in the United States, etc., will be considered as countervailing factors meriting favorable exercise of administrative discretion.").[3] On or about November 24, 1992, Mr. Colonel filed a motion to reconsider the Board's decision. Said motion was denied on June 3, 1993.

5. Within the thirty day time period for seeking judicial review of said decision, (and in reliance on *Pierre v. INS,* 932 F.2d 418 (5th Cir. 1991),[4] Mr. Coronel filed a motion to reopen to seek suspension of deportation, under (former) 8 U.S.C. §1254(a)(2). On March 9, 2000, the BIA denied that motion, on the grounds that he

---

[3] *See also, Matter of Rodarte-Espinoza*, 21 I&N Dec. 150, 151 (BIA 1995) (Alien who married a U.S. citizen *after* deportation hearing, had one USC child and another on the way, four LPR siblings, and thirteen years as an LPR, showed unusual or outstanding equities, even for purpose of *reopening* proceedings).

[4] *Pierre* held that where a motion to reopen or reconsider filed within the statutory period to seek judicial review of a BIA decision was denied by the BIA, the Court could review both decisions. It was overruled by *Stone v. INS,* 115 S.Ct. 1537 (1995).

3

(allegedly) was not eligible for the relief sought. The BIA cited *Matter of Perez*, I.D. 3389 (BIA 1999) (continuous physical presence for purposes of cancellation of removal under 8 U.S.C. §1229b is terminated on the date the offense was committed). However, since Mr. Coronel was not applying for relief under 8 U.S.C. §1229b, and the standards under §1254(a)(2) are significantly different, *Perez* is not on point. As in the related case, *Agado v. Trominski*, No. CA B-99-160, the Board also cited *Matter of Nolasco,* I.D. 3385, (BIA 1999), which addressed eligibility under 8 U.S.C. §1254(a)(1), and likewise does not resolve the issues raised under §1254(a)(2).

6. In the alternative, and assuming, *arguendo*, that Mr. Coronel's physical presence was "terminated" with the Order to Show Cause in 1987, a new period commenced at that time, and more than ten years had subsequently accrued, prior to the BIA's decision herein. Current 8 U.S.C. §1229b(d) refers to "any period" of continuous physical presence, clearly leaving open the possibility that, as here, there may be more than one such period.

## II. JURISDICTION

7. Mr. Coronel's case falls under the transitional provisions of IIRIRA §309(c)(4), since proceedings were initiated prior to April 1, 1997, and the BIA's order of March 9, 2000, was issued more than 30 days after the enactment of IIRIRA. Because he was ordered deported on the basis of a controlled substance violation, he is subject to IIRIRA §309(c)(4)(G), and the Court of Appeals lacks jurisdiction over the matter. *Lerma de Garcia v. INS,* 141 F.3d 215 (5th Cir. 1998). Consequently, this Court has jurisdiction under 28 U.S.C. §2241. *Requena-Rodriguez v. Pasquarell*, 190 F.3d 299, 306 (5th Cir. 1999) ("In actuality, this solution essentially continues the original streamlining regime - operative from 1961 to 1996 -

4

under which habeas was available only where direct review was not").[5] Said jurisdiction covers claimed errors of statutory construction, and Due Process. *Id.* ("This jurisdiction is broad enough to encompass Requena's retroactivity claim and his equal protection claim - both of which would have been cognizable even at the lowest pre-IIRIRA ebb of immigration habeas jurisdiction").

### III. FIRST CAUSE OF ACTION

8. In its decision of March 9, 2000, the Board of Immigration Appeals failed to give any consideration, much less meaningful consideration, to Petitioner's virtually ironclad statutory argument under (former) §1254(a)(2), and (current) §1229b.

9. The BIA cited *Matter of Perez, supra,* which involved an application for cancellation of removal, under (current) 8 U.S.C. §1229b, not suspension of deportation, under (former) §1254(a)(2), which has very different statutory requirements.

10. The BIA also asserted that "service of the Order to Show Cause ends the period of continuous physical presence for purposes of suspension of deportation," citing *Matter of Nolasco,* I.D. 3385 (BIA 1999). However, *Nolasco* involved §1254(a)(1), not §1254(a)(2).

---

[5] Although later overruled, the existence of *Pierre*, at that time, shows that there was no "deliberate by-pass" of review of the 1993 decision within the meaning of *U.S. ex rel Marcello v. INS*, 634 F.2d 964, 971 (5th Cir. 1981) (habeas jurisdiction under 28 U.S.C. §2241 exists to review deportation order where there was no "deliberate bypass" of direct review by the court of appeals). The BIA also sent the 1991 decision to an incorrect address, and it was not received until November 23, 1992. This deprived Petitioner of his right to review of the 1991 order in the Court of Appeals, rendering habeas review thereof proper under *Marcello* as well.

11. Unlike (former) §1254(a)(1), and (current) §1229b, (former) 8 U.S.C. §1254(a)(2) specifies the date when physical presence begins to accrue, requiring ten years physical presence "immediately following" the *conviction* which rendered Mr. Coronel deportable.

12. Even assuming, *arguendo,* that (current) 8 U.S.C. §1229b(d) applies herein,[6] under its plain language, any pertinent period of physical presence is deemed to end when one *commits* a covered offense, or when the charging document is served, "whichever is earliest."[7] Without a doubt, Mr. Coronel's offense was committed **before** he was served with the Order to Show Cause, charging deportability on the basis of the subsequent *conviction*.

13. In other words, under §1229b(d), any period of physical presence which Mr. Coronel had previously accrued, (which would have been relevant to an application for suspension of deportation under §1254(a)(1)), "ended" on January 21, 1983, when he *committed* the offense. But the physical presence required for 8 U.S.C. §1254(a)(2) did not begin to run until April 29, 1983, when he was *convicted* of the offense. Therefore, under the plain language of the statute, Mr. Coronel now has seventeen years of continuous physical presence "immediately following" the conviction, and is

---

[6] The reach of said provision is also limited by its introductory clause, to wit, "[f]or purposes of this section..." (i.e. for purposes of (current 8 U.S.C. §1229b), which addresses applications for cancellation of removal.

[7] 8 U.S.C. §1229b(d) is also explicit that it applies only "[f]or purposes of this section," to wit, applications for cancellation of removal, under Section 1229b. However, even assuming, *arguendo,* that it also applies to applications for suspension of deportation, the offense was committed prior to the service of the OSC, and, under plain language thereof, the physical presence involved commenced only on the date of the conviction.

6

clearly eligible for suspension of deportation under 8 U.S.C. §1254(a)(2). is applicable only to §1254(a)(1). Alternatively, he has thirteen years after the issuance of the OSC, and even if that event "terminated" his prior period of physical presence, the plain language of (current) 8 U.S.C. §1229b(d) permits him to demonstrate "any period" of such presence.

14. Neither *Nolasco*, nor *Perez* addressed the fact that, in cases where suspension is sought under (former) 8 U.S.C. §1254(a)(2), the plain language thereof, in conjunction with 8 U.S.C. §1229b(d), causes the required physical presence to *begin* to accrue only on the date of the conviction. Any other construction would render 8 U.S.C. §1254(a)(2) meaningless, since it would be logically impossible to accrue any physical presence "immediately following" a given conviction, if physical presence terminated when the offense leading to the conviction was *committed*.[8] In its decision of March 9, 2000, the BIA does not address this logical conundrum.

IV.   SECOND CAUSE OF ACTION

15. Mr. Coronel also seeks review of the Board's decisions of June 3, 1993, denying his motion to reconsider, and of the initial

---

[8] The same result can be reached from a policy standpoint. 8 U.S.C. §1254(a)(1) was intended primarily for undocumented immigrants who had resided in the United States for seven or more years before being detected by INS. In such cases, cutting off the accrual of "continuous physical presence" at the time of detection, (i.e., when the OSC was issued), is appropriate. By contrast, 8 U.S.C. §1254(a)(2) was directed at persons, generally former lawful permanent residents such as petitioner herein, who were convicted of serious offenses, and who, for whatever reason, were not deported immediately, but were, as here, permitted to remain in the U.S. for at least ten years thereafter. *See, e.g., Matter of Pena-Diaz*, 20 I&N Dec. 841 (BIA 1994). Under such circumstances, it makes sense to *start* the clock at the date of the conviction.

7

decision of the BIA, dated February 7, 1991. [9] He asserts that the Board violated his Due Process rights when it held that he had not made out a *prima facie* case that he merited §212(c) relief in the exercise of discretion, in that he had allegedly not shown "unusual or outstanding equities," without giving meaningful consideration to the equities shown, to determine whether they met that level. He was substantially prejudiced thereby, because such a showing had made through his U.S. citizen wife and two U.S. citizen children. Similarly, his Due Process rights were violated by the manner in which he was "tricked" into waiving his right to counsel, and he was substantially prejudiced thereby.

V. PRAYER FOR RELIEF

It is therefore urged that the instant deportation order be vacated, and the case be remanded to the BIA for further proceedings on both of Mr. Coronel's applications for relief, to wit, under prior §212(c) of the Act, and for suspension of deportation, under prior 8 U.S.C. §1254(a)(2).

Respectfully Submitted,

*[signature: Lisa S. Brodyaga]*

Lisa S. Brodyaga, Attorney at Law
17891 Landrum Park Road
San Benito, TX 78586
(956) 421-3226

---

[9] A motion to reconsider, like a petition for rehearing, urges that the BIA's prior decision was incorrect. *See, Matter of Cerna*, 20 I&N Dec. 399, 402 (BIA 1991) ("When we reconsider a decision, we are in effect placing ourselves back in time and considering the case as though a decision in the case on the record before us had never been entered"). Therefore, apart from the fact that said decision was sent to an incorrect address, it cannot, logically, be resolved without reference to the original decision.

```
Federal I.D. No. 1178
Texas Bar No. 03052800
```

## VERIFICATION

I certify that I am familiar with the facts stated above, and that they are true and correct to the best of my knowledge and belief.



## CERTIFICATE OF SERVICE

I certify that a courtesy copy of the foregoing, with Exhibits A, B and C, was personally delivered to the office of Lisa Putnam and Cheri Jones, SAUSAs, 1701 Zoy St., Harlingen, Texas, on this 26th day of April, 2000.