15

United States District Court
Southern District of Texas
FILED

MAY 0 4 2001

Michael N. Milby
Clerk of Court

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

FELIX CORONEL-CARDENAS,

     Petitioner,

v.

E.M. TROMINSKI,

     Respondent.

No. CA B-00-058

---

## PETITIONER'S POST-HEARING MEMORANDUM

---

Lisa S. Brodyaga, Esq.
Counsel For Petitioner
17891 Landrum Park Rd.
San Benito, Texas 78586
(956) 421-3226

May 4, 2001

## I.   THE FACTS AND PROCEDURAL HISTORY

### A.   BACKGROUND

Felix Coronel-Cardenas is a thirty-eight year-old, native and citizen of Mexico, who has resided continuously in this country since his admission as a lawful permanent resident ("LPR"), on July 9, 1980, at the age of seventeen.  His wife and three children, (ages eight, thirteen, and twenty), are all U.S. citizens, and four of his siblings are lawful permanent residents.  On April 29, 1983, Coronel was convicted in the 197th Judicial District Court for Cameron, County, Texas, of the offense of simple possession of marijuana, (between four ounces and five pounds).  For this offense, he was placed on probation for a period of six years.

### B.   PROCEEDINGS BEFORE THE IMMIGRATION JUDGE

On or about April 17, 1987, an Order to Show Cause was issued, alleging deportability under (then) 8 U.S.C. §1251(a)(11), for conviction of a controlled substance violation.  A hearing was scheduled for May 18, 1987.  At that time, Coronel was working in Houston, and, on or about May 5, 1987, his wife wrote a letter to the Court, in his name, asking that the hearing be reset for a later date.  However, when no response was received, Coronel came to Harlingen and appeared in Court at the scheduled hearing.

When he appeared before the Judge, it was his intention to request a continuance, so that he could obtain an attorney.  However, before the hearing commenced, he was advised by the Immigration Judge that he would be given a form to fill out, asking that he not be deported, and that if he filled out that form, and paid a fee (approximately $50), he would be given a second hearing, at which it would be decided whether or not he would be deported.  Believing that this meant that he did not need an attorney **at that time**, and that he could bring an attorney to the hearing at which it would be decided whether he would be allowed to remain in the United States, Coronel agreed to speak for himself at the initial hearing.

CVxPDF - www.texto.com

Therefore, when the Immigration Judge went on the record, Coronel agreed to "go forward" with the hearing, (R:175). [1]  He admitted the allegations of fact, and conceded deportability.  In keeping with his off-the-record representation that Coronel would be given a form to fill out, requesting permission to remain in the United States, the Judge then continued as follows, (R:177):

> It is my duty to advise you that you may be eligible for relief from deportation under Section 212(c) .. we'll go off the record.

The Judge's statement to Coronel, **on the record**, that Coronel might be eligible for §212(c) relief, after which the Judge immediately went **off the record**, corroborates the testimony of both Coronel and his wife that, before the hearing commenced, the Judge had told him that he would be given a form to fill out requesting such relief, and another hearing, at which it would be determined whether or not it would be granted.  However, virtually in mid-sentence, it is apparent that the Judge suddenly realized that Coronel lacked a few weeks before he had the seven years residence in the United States necessary to seek such relief.  When the transcript resumes, the Judge continued as follows, (R:177-78):

> Sir, upon reviewing the Order to Show Cause and also the provisions of the Law which may be applicable to relief from deportation in reference to your case.  It appears that as you said before the Court today that you are not eligible for any relief from deportation. [2]  The only

---

[1]   The Certified Administrative Record is cited as (R:___).

[2]   This awkward grammatical construction is best read as referencing something Coronel said before the hearing about relief from deportation, but advising him that he was not eligible for any such relief.  It would be implausible to interpret it to mean that Coronel had told the Judge, before the hearing, that he was ineligible for relief, when it was the Judge, not Coronel, who was in a position to know about such eligibility.  It does, however, corroborate Coronel's claim that off-the-record discussions were conducted, **prior to the hearing**, regarding §212(c) relief.

2

relief that may have been available to you would have been under Section 212(c). But you must have immigrated into the United States or been a resident of the United States for a period of seven years. And having Immigrated July 9, 1980, you do not meet that prerequisite. Furthermore, it appears to the Court, or it is the determination of the Court that you are not eligible for relief from deportation in the form of voluntary departure because of your conviction in 1983. At this time sir, I will ask you, or I will advise you that you may designate a country of deportation; if you do not wish to designate a country of deportation, I will direct a country. Do you wish to designate Mexico as the country of deportation?

Coronel was obviously surprised by this turn of events, and the following exchange then ensued, (R:178):

Coronel:  Then that means that I don't have the opportunity to ask for relief from deportation?
IJ: Sir, I've advised you that it appears to the Court that you are not eligible for any relief from deportation based upon the facts in your particular case.
Coronel:  Well it's just that I have a job.. I have a stable job.  I'm working.  And my family, or all of my family members are citizens.  And my wife is here present with me.  I have my two daughters here in the United States.
IJ:  Your wife is she a citizen of the United States?
Coronel:  Yes.
IJ:  And your children?
Coronel:  Yes.

At that point, instead of giving him the opportunity to retract his waiver of counsel, (which had been premised on the Judge's off-the-record representation that he would be given a form to fill out, requesting relief, and another hearing to determine whether or not he merited such relief, at which he could be represented by counsel), the Immigration Judge proceeded with the hearing, and ordered him deported.  The Judge advised him of the right to appeal the decision to the BIA, and Coronel reserved appeal  (R:178-80).

Mr. Colonel asserts that he was thereby improperly deprived of his

3

right to counsel, in that his waiver of counsel was not "knowingly, intelligently, and competently made," as required by *Matter of Gutierrez,* 16 I&N Dec. 226,228 (BIA 1977), citing *Burquez v. INS,* 513 F.2d 751 (10th Cir. 1975).

As more fully discussed below, he suffered substantial prejudice from this deprivation, in that the outcome of the hearing might have been different, if he had been given a chance to obtain counsel. This violated Due Process. *See, Partible v. INS,* 600 F.2d 1094 (5th Cir. 1979) (Where waiver of counsel at a deportation hearing was not competently and understandingly made, and where the outcome of the proceeding might have been different if counsel had been present, the alien was entitled to a new hearing.). [3]

### C. PROCEEDINGS ON CORONEL'S INITIAL APPEAL

Colonel appealed, and requested that the case be remanded to permit him to apply for relief under (then) §212(c) of the Act. [4] In his brief in support of the appeal, and motion to reopen (remand), filed on March 3, 1989, Coronel argued that the record demonstrated a variety of procedural errors. First, he urged that it was error for the Judge to have conducted such important aspects of the proceeding off the record. (R:134-136). He also argued that the Judge should have construed his letter as a motion for continuance, and addressed it during the hearing, particularly since he was not

---

[3] When the Judge ordered him deported, Colonel lacked a few weeks of eligibility for §212(c) relief. Had he not been led to believe that he was already eligible for relief, he would not have waived his right to counsel at what he believed was simply an initial hearing, and his eligibility would have ripened by the time the case was rescheduled for him to get counsel. Therefore, he was "prejudiced" by the deprivation of counsel. *See,* Exhibits H and I, herein incorporated by reference, and discussed *infra,* at pp.8-9.

[4] Thereafter, in July of 1987, Mr. Coronel was arrested for driving while intoxicated. As a result, in October of 1987, his probation was revoked, and he served thirty days in jail.

4

served with the OSC until the day of the hearing, and had not been given the required legal aid list, (R:136-139).

Coronel also argued that his right to counsel had been improperly abridged.  Given the circumstances under which it was obtained, and the fact that the Immigration Judge failed to give him a chance to retract his waiver, once the Judge realized that his pre-hearing representations to Coronel about applying for relief from deportation were incorrect, Coronel urged that his waiver was not "competently and understandingly made." (R:138).  He also filed a fee-paid application for §212(c) relief, for which his eligibility had, by that time, fully ripened, [5] and urged that the case should be remanded for a hearing on that application. (R:139-140).

In support of his request for a remand, Coronel filed affidavits from himself and his wife, explaining what had occurred off-the-record, and that he had only waived counsel **for that hearing**, because he had been told he would be given an application to file, and another hearing, where the application would be adjudicated, and to which he could bring counsel. (R:142-43,145-46).  He also submitted a copy of the letter of May 5, 1987, asking that the case be continued, (R:148), a copy of the conviction documents, (R:150-153), and an affidavit from another attorney, prepared in connection with an entirely different case, addressing the manner in which important discussions were being carried on off-the-record by Immigration Judges [plural] in the Harlingen district, and that such discussions were not even summarized for the record, (R:155):

> Over the past year or two, a number of changes have been
> made in the procedures of the EOIR in this district.  One
> such change has been the institution of what might

---

[5]  *See, Rivera v. INS,* 810 F.2d 540 (5th Cir. 1987) (status as LPR terminates when administratively final order of deportation is issued).  *See also, Matter of Lok,* 18 I&N Dec. 101 (BIA 1981) (same), discussed at (R:110-11,n.2).

loosely be called "pre-trial conferences" between the
Immigration Judges and counsel. These conferences are
not recorded, and there is no regular procedure for
memorializing what transpires, either by a summary on the
record, or in written form.

And on March 9, 1989, Coronel formally filed an application for
§212(c) relief, and paid the requisite fee. (R:115-117).

On February 7, 1991, the BIA dismissed his appeal, and denied his
motion for a remand. (R:107-111). In so doing, the BIA mentioned,
but did not address, his claim that he was improperly denied the
right to counsel, (and other procedural errors raised therein, such
as the failure to provide him with a Legal Aid list, as required by
8 C.F.R. §242.16(a) (1988)). [6]

More importantly, the Board misconstrued Coronel's argument about
the off-the-record discussions, the bulk of which occurred **before**
the hearing ever commenced. Rather, the Board asserted that "**[t]he
immigration judge first went off the record** to ascertain that the
respondent had in front of him a copy of the Order to Show
Cause..." (R:108) (emphasis added). And in support of the Judge's
right to go off the record, the BIA cited 8 C.F.R. §242.15, which
allows the Judge, in his discretion, "to exclude from the record
any arguments made in connection with motions, applications,

---

[6]   Said regulation provided, in relevant part:

The Immigration Judge shall ... advise the respondent of
the availability of free legal services programs ...
[and] ascertain that the respondent has received a list
of such programs ...

Here, the Judge acknowledged that the legal services list had not
yet been provided to Coronel. *See,* (R:175) (emphasis added) ("I
will advise you further if for whatever reason you cannot afford
counsel, there is a legal aid organization which may represent you
at little or no cost and **we will provide you this date with her
name address and telephone number**.")

6

requests, or objections."[7]   However, the right to exclude arguments about such matters did not authorize the Judge to exclude initial discussions about the right to make such applications, or representations made by the Judge as to whether Coronel was eligible for relief, and whether he would be given another hearing, at which he could bring counsel, with respect to such an application. The BIA also truncated Coronel's complaints about the off-the-record discussions, limiting them to discussion of whether Coronel was eligible for §1251(f)(2) relief. (R:108-09).

The most crucial error, however, related to the fact that, before the hearing, the Judge had advised Coronel that he would be given an application form, and that another hearing would be scheduled, when it would be decided whether or not relief would be granted, and at which he could be represented by counsel.  In discussing the evidence in support of this claim, the BIA mentioned only the attorney's affidavit, submitted in a different case, completely neglecting to consider the affidavits of Coronel, and his wife.

Instead, the BIA focused on the transcript, (R:109), where it did "not find evidence of due process violations." (R:110).[8]  However,

---

[7]   8 C.F.R. §242.15 (1988) provided, in relevant part:

The hearing shall be recorded verbatim except for statements made off the record with permission of the special inquiry officer.  In his discretion, the special inquiry officer may exclude from the record any arguments made in connection with motions, applications, requests, or objections, but in such event the person affected may submit a brief.

[8]   Appeal are decided on the basis of the record, but motions to reopen, or remand, such as Coronel filed, must be supported by affidavits or other evidentiary material. 8 C.F.R. §103.5(a) (1988) (A motion to reopen ... shall be supported by affidavits or other evidentiary material."); *Matter of L-V-K-*, Int. Dec. 3409 (BIA 1999) ("A motion to reopen that is filed during the pendency of an appeal may be styled as a motion to remand. 8 C.F.R. §3.2(c)(4). In substance, however, it remains a motion to reopen.").

there was no discussion of whether the circumstances related by Coronel and his wife would have constituted such a violation. Nor did the BIA discuss whether Coronel's waiver of counsel was "competently and understandingly made," as required by *Matter of Gutierrez, supra* at 228. [9] Rather, the BIA simply speculated that a continuance for counsel "would not have delayed the hearing for more than the 2 months necessary to become eligible for section 212(c) relief." (R:110). This, it is submitted, was an improper form of "administrative notice," as it related to a disputed fact.

It was also factually incorrect. During that time frame, Master Calender hearings were often continued for one month or longer for the respondent to obtain counsel. And frequently, the first time an attorney was present, he or she would request, and receive, a continuance for preparation. In the normal course of such hearings, this often delayed proceedings for more than two months. [10]

In fact, Coronel might have been better off if he had not even appeared for the hearing on May 18, 1987, and simply relied on his

---

[9]   *See also, Partible v. INS,* (Where alien waived her right to counsel at deportation hearing without being provided with any understanding by immigration judge of the complexity of her dilemma and without any awareness of cogent legal arguments which could have been made on her behalf, where waiver of counsel was therefore not competently and understandingly made, and where outcome of proceeding might have been different if counsel had been present, alien was entitled to a new hearing).

[10]   *See,* Master Calendar hearing notices in Salas-Escamilla, A14 668 508. An initial setting was scheduled for April 25, 1988. That setting was continued until June 1, 1988, by which time he had obtained counsel, and the hearing was again rescheduled, still for a Master Calendar appearance, until September 6, 1988. *See also,* transcript from the case of Jesus Delgado-Silva, A10 542 609. On June 16, 1989, he appeared *pro se,* and was granted a continuance until August 4, 1989, to obtain counsel. On that date, he appeared with counsel, who requested, and was granted, a continuance, until August 23, 1989. Petitioner's Exhibit H, of which it is requested that this Court take judicial notice. Rule 201, F.R.Evidence.

CUisPDF - www.fineisa.com

letter of May 8, 1987 requesting that the case be rescheduled. In
the case of Victorino Lozano-Molina, A36 599 699, a hearing was
scheduled for July 13, 1989. On July 5, 1989, Mr. Lozano wrote to
the Court, explaining that he was working up north, and requesting
a three month continuance. The letter was received by the Court on
July 10, 1989. Lozano did not appear at the hearing. Nonetheless,
without objection from INS, the Judge continued the case to October
12, 1989. (Petitioner's Exhibit I, incorporated by reference, of
which it is also requested that the Court take judicial notice).
Equal Protection would require that one who appeared for a hearing
after writing to request a continuance, not be placed in a worse
position than one who simply failed to show up, after writing such
a letter! *See generally, Lujan-Armendariz v. INS,* 222 F.3d 728,
749 (9th Cir. 2000) ("As there is no rational basis for a federal
statute that treats persons adjudged guilty of a drug offense under
state law more harshly than persons adjudged guilty of the
identical offense under federal law, the petitioners may not be
deported for their first-time simple drug possession offenses.").

Clearly, therefore, the BIA incorrectly *assumed,* (*i.e.,* improperly
took administrative notice of a disputed fact), [11] that a
continuance for the purpose of obtaining counsel would not have
resulted in Coronel accumulating seven years as an LPR. And, as
discussed more fully below, had he ultimately been given a hearing
on his §212(c) application, he stood a "reasonable likelihood," if
not a strong likelihood, of earning such relief. *See, Matter of
Arreguin,* 21 I&N Dec. 38 (BIA 1995) (incarcerated alien who had
been caught smuggling 78 kilos of marijuana into the U.S. granted
§212(c) relief). *See also, U.S. v. Encarnacion-Galvez,* 964 F.2d
402,407 (5th Cir. 1992) ("By a showing of prejudice, we mean that

---

[11] *See, Rivera-Cruz v. INS,* 948 F.2d 962,966 (5th Cir.1992)
("we review the taking of administrative notice by the Board under
the abuse of discretion standard.").

there was a reasonable likelihood that but for the errors complained of the defendant would not have been deported.)

The BIA further erred in denying Coronel's request that the case be remanded. The Board concluded that Coronel had not made a *prima facie* showing that he merited §212(c) relief in the exercise of discretion, because he had not shown "unusual or outstanding" equities. However, the Board failed to analyze his equities to determine whether they rose to that level. [12]

In fact, Coronel had shown "outstanding" equities. The record demonstrated that "all of [Coronel's] family members" are United States citizens, including his wife, and two children, and that he had a "stable job." The existence of such strong family ties is, in and of itself, an "outstanding equity" under Board precedent. *See, e.g., Matter of Arreguin, supra,* at 41 ("we find that the [two] minor children do constitute an outstanding equity..."), and *Matter of Rodarte-Espinoza,* 21 I&N 150,151 (BIA 1995) ("We find that the strong family ties the respondent now has in this country, as well as his long residence here (the respondent became a lawful permanent resident in 1982, but apparently came here as a teenager and lived with his brothers for some years prior to that) constitute the unusual or outstanding equities necessary in this case."). [13] *See, also, Matter of Arai,* 13 I&N Dec. 494,496 (BIA 1970) ("Where adverse factors are present in a given application,

---

[12]   *See, Opie v. INS,* 66 F.3d 737,740 (5th Cir. 1995), quoting *Ghassan v. INS,* 972 F.2d 631,636 (5th Cir. 1992) (Although the BIA need not "write an exegesis on every contention... its opinion must reflect that it has heard and thought and not merely reacted.").

[13]   In *Rodarte-Espinoza, supra,* the immigrant had married a U.S. citizen *after* the deportation hearing, had one U.S.C. child and another on the way, and four LPR siblings. Yet the BIA considered these to be unusual or outstanding equities, even for the purpose of *reopening* proceedings).

CIMPDF - www.fastio.com

it may be necessary for the applicant to offset these by a showing of unusual or even outstanding equities.  Generally, favorable factors such as family ties, hardship, length of residence in the United States, etc., will be considered as countervailing factors meriting favorable exercise of administrative discretion.").

### D.   PROCEEDINGS ON CORONEL'S MOTION TO RECONSIDER

On November 24, 1992, Colonel filed a motion to reconsider the BIA's 1991 decision. (R:92-98). He noted that the facts showed that, during the improper, off-the-record proceedings, [14] he had been misled by the Judge, and that he had only waived counsel because he had been told he "would be given an application, and another hearing, at which time he could bring counsel." (R:93).

He noted that a relatively small amount of marijuana was involved, that his wife and two daughters were U.S. citizens, and that he had a stable job and work history. He also reminded the BIA that it had previously likened its role in deportation proceedings to a "quest for truth," rather than an "umpire at a sporting event," where the prize was to be awarded "to the side hat has scored the most points." (R:96).  Such a quest, he urged, would have required that the Board examine the entire record, (which was, at that point, minimal), before concluding that he had not shown outstanding equities.  This, in turn, would have resulted in a finding that the appropriate minimum equities had been shown, and a remand for a hearing on his application for §212(c) relief. (R:94-96)

In the motion to reconsider, Coronel also noted the BIA's obligation to show that it had "heard and thought and not merely reacted." (R:96).  Further, he noted that almost ten years had passed since the conviction, and that, under the facts of the case, the denial of the opportunity to seek relief from deportation would

---

[14]   *See*, 8 C.F.R. §242.15.

11

result in a "grave miscarriage of justice." (R:97).

Said motion was denied on June 3, 1993. (R:82-85). In its denial, the Board acknowledged that Coronel had a United States citizen wife, and two citizen children, but (erroneously) concluded that such ties were not an outstanding equity. (R:84). The BIA noted Coronel's steady job history, but found it not to constitute an outstanding equity, (R:5). After commenting on INS' representation that the conviction was for between four ounces and five pounds of marijuana, the BIA made a specific finding that five pounds was a "substantial amount of marijuana, not a small amount as suggested in the respondent's motion to reconsider." (R:84).

However, the Board again completely failed to address Coronel's argument that his right to counsel had been abridged, and that the prior decision should be reconsidered on that grounds.

### E.   PROCEEDINGS ON THE MOTION TO REOPEN TO APPLY FOR SUSPENSION

On June 30, 1993, within the thirty day window for seeking judicial review of said denial, (and in reliance on *Pierre v. INS,* 932 F.2d 418 (5th Cir. 1991), [15]   Coronel filed a motion to reopen to seek suspension of deportation, under (former) 8 U.S.C. §1254(a)(2). This time, he provided a wealth of supporting documentation, showing not only that he was eligible for such relief, but that he merited it in the exercise of discretion. (R:5-80). On August 9, 1993, he submitted Points and Authorities In Support of his Motion to Reopen, (R:5-11), and an expanded declaration from Coronel's wife, amplifying on the hardship which the family would suffer if he were deported. (R:14-15).

---

[15]   *Pierre* held that where a motion to reopen or reconsider filed within the statutory period to seek judicial review of a BIA decision was denied by the BIA, the Court could review both decisions. It was overruled by *Stone v. INS,* 115 S.Ct. 1537 (1995).

12

Said motion remained un-adjudicated until March 9, 2000, when it was denied, solely on the grounds that, under the 1996 amendments to the Immigration Act, Coronel (allegedly) was no longer eligible for the relief sought. As in the related case, *Agado v. Trominski*, No. CA B-99-160, the BIA cited *Matter of Perez*, I.D. 3389 (BIA 1999) (continuous physical presence for purposes of cancellation of removal under 8 U.S.C. §1229b is terminated on the date that the offense was committed). However, Mr. Coronel was not applying for relief under 8 U.S.C. §1229b, and the standards under §1254(a)(2) are significantly different. Therefore, *Perez* is not on point.

As in *Agado,* the Board also cited *Matter of Nolasco,* I.D. 3385 (BIA 1999), which addressed the effect of §1229b(d) on eligibility for suspension of deportation under 8 U.S.C. §1254(a)(1), and likewise does not resolve the issues raised under §1254(a)(2).

## II.   JURISDICTION AND NATURE OF THE PROCEEDINGS

Petitioner Coronel challenges herein two final orders of deportation, [16] for which judicial review in the Circuit Court of Appeals is unavailable. The case at bar presents issues of first impression, which have not been meaningfully addressed by the BIA either in this case, or in a precedent decision. [17]

_____

[16]   Denials of motions to reopen deportation proceedings or to reconsider orders of deportation, are also deportation orders, and as such, are subject to judicial review. *See, Giova v. Rosenberg,* 379 U.S. 18 (1964).

[17]   Coronel, like Agado, in C.A. B-99-160, and Vargas, in B-00-100, sought suspension of deportation pursuant to 8 U.S.C. §1254(a)(2), as well as waivers of deportation under §212(c). For this reason, these cases differ from the series headed by *Cantu-Salinas v. Trominski,* CA B-97-183, appeals withdrawn, March 25, 2001 (5th Cir. No. 98-41325 and consolidated cases).

The jurisdictional questions, including the scope of review, are governed by *Requena-Rodriguez v. Pasquarell*, 190 F.3d 299 (5th Cir.

13

Said motion remained un-adjudicated until March 9, 2000, when it was denied, solely on the grounds that, under the 1996 amendments to the Immigration Act, Coronel (allegedly) was no longer eligible for the relief sought. As in the related case, *Agado v. Trominski*, No. CA B-99-160, the BIA cited *Matter of Perez*, I.D. 3389 (BIA 1999) (continuous physical presence for purposes of cancellation of removal under 8 U.S.C. §1229b is terminated on the date that the offense was committed). However, Mr. Coronel was not applying for relief under 8 U.S.C. §1229b, and the standards under §1254(a)(2) are significantly different. Therefore, *Perez* is not on point.

As in *Agado*, the Board also cited *Matter of Nolasco*, I.D. 3385 (BIA 1999), which addressed the effect of §1229b(d) on eligibility for suspension of deportation under 8 U.S.C. §1254(a)(1), and likewise does not resolve the issues raised under §1254(a)(2).

## II.   JURISDICTION AND NATURE OF THE PROCEEDINGS

Petitioner Coronel challenges herein two final orders of deportation, [16] for which judicial review in the Circuit Court of Appeals is unavailable. The case at bar presents issues of first impression, which have not been meaningfully addressed by the BIA either in this case, or in a precedent decision. [17]

---

[16]   Denials of motions to reopen deportation proceedings or to reconsider orders of deportation, are also deportation orders, and as such, are subject to judicial review. *See, Giova v. Rosenberg*, 379 U.S. 18 (1964).

[17]   Coronel, like Agado, in C.A. B-99-160, and Vargas, in B-00-100, sought suspension of deportation pursuant to 8 U.S.C. §1254(a)(2), as well as waivers of deportation under §212(c). For this reason, these cases differ from the series headed by *Cantu-Salinas v. Trominski*, CA B-97-183, appeals withdrawn, March 25, 2001 (5th Cir. No. 98-41325 and consolidated cases).

The jurisdictional questions, including the scope of review, are governed by *Requena-Rodriguez v. Pasquarell*, 190 F.3d 299 (5th Cir.

13

Said motion remained un-adjudicated until March 9, 2000, when it was denied, solely on the grounds that, under the 1996 amendments to the Immigration Act, Coronel (allegedly) was no longer eligible for the relief sought.  As in the related case, *Agado v. Trominski*, No. CA B-99-160, the BIA cited *Matter of Perez*, I.D. 3389 (BIA 1999) (continuous physical presence for purposes of cancellation of removal under 8 U.S.C. §1229b is terminated on the date that the offense was committed).  However, Mr. Coronel was not applying for relief under 8 U.S.C. §1229b, and the standards under §1254(a)(2) are significantly different.  Therefore, *Perez* is not on point.

As in *Agado*, the Board also cited *Matter of Nolasco*, I.D. 3385 (BIA 1999), which addressed the effect of §1229b(d) on eligibility for suspension of deportation under 8 U.S.C. §1254(a)(1), and likewise does not resolve the issues raised under §1254(a)(2).

## II.   JURISDICTION AND NATURE OF THE PROCEEDINGS

Petitioner Coronel challenges herein two final orders of deportation, [16] for which judicial review in the Circuit Court of Appeals is unavailable.  The case at bar presents issues of first impression, which have not been meaningfully addressed by the BIA either in this case, or in a precedent decision. [17]

---

[16]  Denials of motions to reopen deportation proceedings or to reconsider orders of deportation, are also deportation orders, and as such, are subject to judicial review. *See, Giova v. Rosenberg*, 379 U.S. 18 (1964).

[17]  Coronel, like Agado, in C.A. B-99-160, and Vargas, in B-00-100, sought suspension of deportation pursuant to 8 U.S.C. §1254(a)(2), as well as waivers of deportation under §212(c). For this reason, these cases differ from the series headed by *Cantu-Salinas v. Trominski*, CA B-97-183, appeals withdrawn, March 25, 2001 (5th Cir. No. 98-41325 and consolidated cases).

The jurisdictional questions, including the scope of review, are governed by *Requena-Rodriguez v. Pasquarell*, 190 F.3d 299 (5th Cir.

## A. JURISDICTION OVER THE ORDER OF MARCH 9, 2000

Coronel's primary challenge is to the March 9, 2000 order, denying his motion to reopen to seek suspension of deportation under 8 U.S.C. §1254(a)(2) (his "ten year suspension" claim). This aspect of Coronel's petition falls under the "transitional" rules of §309(c)(1) of the Illegal Immigration Reform and Immigrant Responsibility Act, ("IIRIRA"), and is controlled by Fifth Circuit precedent that IIRIRA §309(c)(4)(G) deprives it of *all* jurisdiction over cases within its scope, but that a remedy exists in Habeas Corpus. [18] *Lerma de Garcia v. INS,* 141 F.3d 215 (5th Cir. 1998), *reh den*; *Requena, supra*. INS' claim that IIRIRA §309(c)(4)(G) also divests this Court of habeas jurisdiction in such cases was rejected by the Fifth Circuit in *Requena, supra*.

## B. JURISDICTION OVER THE ORDER OF JUNE 3, 1993 [19]

The second aspect of Mr. Coronel's petition, (his "Due Process" claim), challenges the June 3, 1993 denial of his motion to reconsider the dismissal of his original appeal. In this regard, he would note that his motion to reopen to apply for suspension of

_____

1999), and *U.S. ex rel Marcello v. INS,* 634 F.2d 964,971 (5th Cir. 1981). Here, as in *Requena,* Petitioner asserts that the BIA's finding that he is statutorily ineligible for relief derives from an error of law, and is therefore cognizable in Habeas Corpus. In his second cause of action, Coronel asserts a Due Process violation, also appropriately raised in Habeas Corpus, under *Requena,* since he did not deliberately by-pass review by the Fifth Circuit, as discussed in *Marcello*.

[18]   Mr. Coronel is subject to IIRIRA §309(c)(4)(G), since his deportation order was based on a marijuana conviction.

[19]   Since the counsel issue was also raised in Coronel's 1993 motion to reopen, and ignored in the March 9, 2000, denial of that motion, it could possibly be reached through review of that denial. Because it was a specific focus of Coronel's 1993 motion to reconsider, however, it is more appropriately reached through habeas review of the Board's decision of June 3, 1993.

14

deportation was filed on June 30, 1993, within the statutory period for seeking review of the denial of the motion to reconsider. Coronel filed a motion to reopen, rather than a petition for review to the Fifth Circuit, in reliance on *Pierre v. INS*, 932 F.2d 418 (5th Cir. 1991), [20] which would have allowed him to seek review of both decisions by the Fifth Circuit, should the BIA deny his motion to reopen.  Therefore, this Court also has §2241 jurisdiction over the 1993 decision of the BIA, under the law as in effect prior to 1996. *See, U.S. ex rel Marcello v. INS, supra* at 971, holding that, absent a "deliberate bypass" of direct review, habeas jurisdiction under 28 U.S.C. §2241 exists to review a deportation order. [21]

---

[20]   *Pierre* held that filing a motion to reopen or reconsider within the statutory period to seek judicial review of a prior BIA decision tolled the appeal period, so that if that motion was later denied, the Court could review both decisions simultaneously. *Pierre* was overruled by *Stone v. INS*, 115 S.Ct. 1537 (1995).

[21]   By filing his motion to reopen within the statutory period for seeking review of the 1993 decision, Coronel intended only to postpone, (and possibly obviate the need for), review by the Fifth Circuit of the 1993 decision.  It was not a "deliberate bypass" of such review, in favor of bringing a habeas action.  Rather, *Stone*, and then IIRIRA §309(c)(4)(G), took away his right to review by the Fifth Circuit, and forced him to seek relief in habeas.  This brings him within the scope of *Marcello, supra*:

> Next, the government urges us to discern and apply to Marcello's attempt to obtain relief in this case, pursuant to 28 U.S.C. s 2241, the exhaustion requirements that are applied in actions brought pursuant to sections 2254 (state criminal convictions) and 2255 (federal ones). Only when the alien has availed himself of the normal mode of appeal provided him by section 1105a, it is said, should the courts entertain a plea for the extraordinary relief of habeas corpus. There is force and reason in this contention as well; however, to apply it now would be to bar Marcello from any review whatever, the six-month period for an appeal having long passed. Absent a finding of deliberate bypass of the direct appeal, [FN12] we do not believe such an outcome just or appropriate.
>
> FN12. The court below did not make such a finding. In the

15

Jurisdiction under 28 U.S.C. §2241 covers errors of statutory construction, as well as constitutional claims. *Requena-Rodriguez, supra,* ("This jurisdiction is broad enough to encompass Requena's retroactivity claim and his equal protection claim - both of which would have been cognizable even at the lowest pre-IIRIRA ebb of immigration habeas jurisdiction").

### III.  LEGAL STANDARDS TO BE APPLIED
### A.  SUMMARY JUDGMENT

As noted in *McAllister v. Resolution Trust Corp.*, 201 F.3d 570, 574 (5th Cir. 2000) (internal citations omitted) (emphasis added):

> Summary judgment is proper, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." ... *Disputed facts preclude summary judgment if the evidence would allow a reasonable jury to return a verdict for the non-movant...* "Although we consider the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the nonmovant, *the nonmoving party may not rest on the mere allegations or denials of its pleadings*, but must respond by setting forth specific facts indicating a genuine issue for trial."

---

> circumstances of this case, and in view of Marcello's long experience with the laws governing deportation and his demonstrated ability in evading them, we might almost do so as a matter of law...

Here, Coronel did not immediately appeal the 1993 decision to the Fifth Circuit. Rather, within the window for appeal, he filed the motion to reopen. *Pierre* would have allowed judicial review of both decisions, if the BIA denied the motion. Under *Marcello*, he may likewise obtain habeas review of both decisions. He did not deliberately by-pass review of the 1993 decision, but believed that he was only postponing it, to be reviewed together with any denial of his motion to reopen, in the event that motion was also denied.

16

In the case at bar, the only issue of material fact which could be considered to be in dispute revolves around Coronel's claim that his right to counsel was abridged by the Immigration Judge. Even with respect to that claim, however, it is urged that there are no genuine issues of material fact, as defined by *McAllister*, *supra,* but only disputes as to the legal effect of the uncontested facts.

In other words, the basic facts as to what happened at the initial hearing are undisputed. Prior to going on the record, the Judge told Coronel that he would be given an form to fill out, to request that he not be deported, and that his case would be rescheduled for a hearing to determine whether or not he would be allowed to stay, at which hearing he could bring counsel. When the Judge went on the record, Coronel agreed to speak for himself, on that date, in reliance on what he had been told, off-the-record, by the Judge. But when the Judge realized that Coronel was a little short of the seven years, he reneged on his promise to reschedule the case, but did not give Coronel a chance to withdraw his waiver of counsel, which waiver had been premised on the promise of a later hearing to determine whether he would be permitted to remain in the country.

There is not a shred of evidence to counter these facts, much less, sufficient evidence on which to base a contrary conclusion, and they should be taken as established. The Court must determine, as a matter of law, whether Coronel's waiver was, under those circumstances, knowing and voluntary. If not, the Court must also determine whether Coronel was substantially prejudiced thereby, i.e., whether there was a "reasonable likelihood" that the result of the proceeding might have been different if he had been given an opportunity to retract his waiver, and the case had been reset for him to obtain counsel. *See, U.S. v. Encarnacion-Galvez, supra.*

To the extent that the Petition presents purely legal issues, they must be determined *de novo.* *McAllister, supra.*

## B.  SCOPE OF *DE NOVO* REVIEW

In addition to deciding whether Coronel's right to counsel was abridged, a mixed question of law and fact, [22] the Court must determine whether the BIA correctly found that he was statutorily ineligible for relief under (prior) 8 U.S.C. §1254(a)(2).

As summarized in *State of Texas v. DHHS*, 61 F.3d 438 (5th Cir. 1995) substantial deference is due to an agency's interpretation of an ambiguous statute, where the ambiguity arises from a statutory void, left by Congress for the agency to fill:

> Under such circumstances, judicial review is quite limited.  See Pauley v. BethEnergy Mines, Inc., 501 U.S. 680, 696, 111 S.Ct. 2524, 2534, 115 L.Ed.2d 604 (1991) ("When Congress, through express delegation or the introduction of an interpretive gap in the statutory structure, has delegated policymaking authority to an administrative agency, the extent of judicial review of the agency's policy determinations is limited.").   In the seminal case of Chevron, U.S.A. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), the Supreme Court held that:
>
>> [t]he power of an administrative agency to administer a congressionally created ... program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress.... Sometimes the legislative delegation to any agency on a particular question is implicit rather than explicit. In such a case, a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency....

Where the ambiguity is *not* the result of explicit or implicit

---

[22]  *See, Sayre v. Anderson*, 238 631 (5th Cir. 2001) (ineffective assistance of counsel is a mixed question of law and fact).

18

CMsPDF - www.textss.com

delegation of "policymaking authority," and involves a point of law on which the agency has no special expertise, agency construction of a statute, even one it is charged with administering, is not entitled to any particular deference. *Microcomputer Technology Institute v. Riley*, 139 F.3d 1044,1051 (5th Cir. 1998):

> Such deference, [on issues of retroactivity] like deference to any other agency policy decision, seems, at first blush, to be within Chevron's concept of the administrative state: Where Congress has delegated policymaking power, expert and politically accountable agencies, rather than generalist and unaccountable judges, should fill statutory interstices. See Chevron, 467 U.S. at 844-45, 865-66...
>
> Retroactivity, however, involves no policy considerations, but concerns only the application of settled policy under particular circumstances. It does not call any agency expertise into play; rather, it is a legal concept involving settled principles of law and is no more subject to deference than is an agency's interpretation of, say, a statute of limitations.

The BIA's decision of March 9, 2000 (R:2-3), does not even *purport* to interpret the statutes at issue. It simply applies two BIA precedent decisions: one based on the application of the stop-time provisions of 8 U.S.C. §1229b(d) to requests for cancellation of removal, under §1229b, and one based on its application to requests made under (former) 8 U.S.C. §1254(a)(1). No attempt was made to determine how the analysis is impacted by the different language, and purpose, of §1254(a)(2). Consequently, the BIA's decision is not a "permissible construction" of a policymaking gap, under *Chevron USA., Inc. v. Natural Resources Defense Council*, 467 U.S. 837,842-43 (1984), and is not entitled to deference.

Moreover, the statutes are not even ambiguous. Rather, the plain language of (new) 8 U.S.C. §1229b(d) and (prior) §1254(a)(2) mandate a conclusion that the BIA's decision is in error. The

19

BIA's implicit interpretation would also construe §1254(a)(2) out
of existence, a result incompatible with the statutory design.

### IV.    THE BIA ERRED IN CONCLUDING THAT CORONEL IS STATUTORILY INELIGIBLE FOR RELIEF UNDER (PRIOR) 8 U.S.C. §1254(a)(2).

Mr. Coronel first urges that the BIA erred, as a matter of law, in
concluding that he was ineligible for suspension of deportation
under (prior) 8 U.S.C. §1254(a)(2). This issue was recently before
the Court in *Agado v. Trominski,* No. C.A. B-99-160, and is also
presented in *Vargas-Lazarit v. Trominski*, No. C.A. B-00-100.

In denying Coronel's 1993 motion to reopen to apply for suspension
of deportation, the BIA relied on two recent precedent decisions:
*In re Nolasco, supra,* applying the "stop-time rule" of (new) 8
U.S.C. §1229b(d) to applications for suspension of deportation
under (former) §1254(a)(1), and *Matter of Perez, supra,* holding
that §1229b(d) applies to offenses committed prior to enactment.

However, neither of these decisions addresses the issue presented
herein. Even assuming, *arguendo,* that the other problems of
construction are overcome, [23] and that *Nolasco* correctly holds that
(new) 8 U.S.C. §1229b(d) applies to applications under (former)
§1254(a)(1), a very different result is produced when §1229b(d) is
applied to §1254(a)(2), the provision is involved herein. (Former)
§1254(a)(1) requires seven years physical presence "immediately
preceding" the application, and rarely involves deportability
resulting from criminal conduct. By contrast, (former) §1254(a)(2)
requires a showing of ten years physical presence "immediately
following" the assumption of the status constituting grounds for

---

[23] Including, most notably, the fact that, by its terms, (new)
8 U.S.C. §1229b(d) applies only to applications made under that
section, to wit, applications for cancellation of removal. Neither
the BIA nor the Fifth Circuit has addressed this point to date.

CSMPDF - www.fastio.com

deportation.  Frequently, as here, this involves an LPR, who has been convicted of an offense which is grounds for deportation.

(New) 8 U.S.C. §1229b(d), the so-called "stop-time rule," provides, in relevant part, as follows (emphasis added):

> **For purposes of this section**, [8 U.S.C. §1229b], **any period of... continuous physical presence in the United States shall be deemed to end** when the alien is served a notice to appear under section 239(a) [(new) 8 U.S.C. 1229(a)] or **when the alien has committed an offense referred to in section 212(a)(2)** [8 U.S.C. §1182(a)(2)] that renders the alien... removable from the United States under section 237(a)(2) [8 U.S.C. 1227(a)(2)] ... **whichever is earliest.**

In *Nolasco*, as in most cases under §1254(a)(1), no criminal offense was involved.  Rather, the immigrant was simply undocumented. Consequently, the "earliest" of the events described in §1229b(d) was the service of the charging document, (the OSC).  Under §1254 (a)(1), an applicant must show that he has been physically present in the U.S. for a period of seven years "immediately preceding the date of such application," Therefore, the applicant in *Nolasco* needed seven years physical presence before filing the application, but the time stopped running with the service of the OSC.

Determining eligibility for suspension under §1254(a)(2) requires a different analysis.  In such cases, the Attorney General may suspend the deportation of an alien who (emphasis added):

> is deportable under paragraph (2), (3) or (4) of section 241(a) [8 U.S.C. §1251(a)(2), (3) or (4)]; **has been physically present in the United States for a continuous period of not less than ten years immediately following** the commission of an act, or **the assumption of a status, constituting a ground for deportation**, and proves that during all of such period he has been and is a person of

21

good moral character ...

The "commission" of an offense, even a drug offense, is not grounds
for deportation under (prior) 8 U.S.C. §1251(a). Rather, it is the
**conviction** for said offense, (i.e., "the assumption of a status"),
which causes an immigrant to be subject to deportation. *See,* 8
U.S.C. §1251(a)(2)(B)(i):

> Controlled substances.  (i)  Conviction.  Any alien who
> at any time after entry has been convicted of a violation
> of ... any law ... relating to a controlled substance ...
> is deportable.

Here, the **conviction** occurred on April 29, 1983.  However, as shown
above, under §1229b(d), accrual of physical presence terminates
with the "earliest" of the events described therein, (the
commission of the offense, or service of the charging document).
In the case of one deportable for a specified conviction, this
would be the **commission** of the offense, since the charging document
would not be issued until after the conviction, which would also be
after the offense was committed.  In other words, if the accrual of
physical presence terminated with the commission of the offense, it
would terminate before it started to run, which, for §1254(a)(2),
occurs when the immigrant is convicted of that offense.

Alternatively, a holding that for purposes of §1254(a)(2), physical
presence continued to accrue when the offense was committed, and
ceased only when the OSC was served, would contravene the clear
mandate of §1229b(d), (by ignoring the phrase, "whichever is
earliest").  It would also render (prior) §1254(a)(2) inoperative:
by definition, no one could accrue ten of years physical presence
following a given conviction, if the clock stopped running when the
offense was committed!

Nor is this analysis affected by the amendments made by the
Nicaraguan Adjustment and Central American Relief Act, ("NACARA"),

22

CutePDF - www.fasito.com

adding the service of Orders to Show Cause to the service of Notices to Appear, as events which could terminate the accumulation of physical presence. Here, (assuming that §1229b(d) applies at all), the pertinent event terminating the accumulation of physical presence would still be the commission of the offense, not the service of the OSC, while under §1254(a)(2), the physical presence began to accrue only with the subsequent conviction.

*Matter of Perez, supra,* is equally inapposite. It simply holds that (new) 8 U.S.C. §1229b(d) means what it says, to wit, that, (for purposes of that section, to wit, for purposes of applications for cancellation of removal under (new) 8 U.S.C. §1229b), physical presence ceases to accrue with the commission of the act on which deportability is based, or the issuance of the charging document, whichever first occurs, and that its provisions apply to offenses committed prior to enactment. It does not purport to analyze the effect, if any, of (new) 8 U.S.C. §1229b(d) on applications for suspension of deportation under (former) 8 U.S.C. §1254(a)(2).

In a later case involving this issue, (*Vargas-Lazarit v. Trominski,* No. B-00-100), the BIA also cited *In re Mendoza-Sandino,* I.D. 3426 (BIA 2000), holding that, in the context of an application for suspension of deportation under §1254(a)(1), physical presence, once terminated, cannot re-accrue. Extending *Mendoza-Sandino* to applications brought under §1254(a)(2) would contravene the plain language, and the purpose, of that section.

Still assuming, *arguendo,* that 8 U.S.C. §1229b(d) is not limited by its plain language, ("for purposes of this section"), to applications made under that section, (i.e., applications for cancellation made under §1229b), if physical presence ceased with the commission of the offense, and, for purposes of applications under (former) §1254(a)(2) could not "re-accrue," no-one could ever qualify for relief under §1254(a)(2). By definition, the commission

23

of an offense always precedes the conviction for that offense, but time under §1254(a)(2) only commences to run with the conviction.

Therefore, the application of §1229b(d), as construed in *Mendoza-Sandino*, to relief under §1254(a)(2) would "defeat the statutory scheme [and] create an absurd result," as discussed in *White v. INS,* 75 F.3d 213,216 (5th Cir. 1996) (a statute will be applied according to its plain meaning, unless such application "would defeat the statutory scheme or create an absurd result"). [24]

This result is also consistent with the policy considerations underlying (prior) 8 U.S.C. §1254(a)(2), and §1229b(d). In the early years following enactment of §1254(a)(2), there was a great deal of litigation as to whether the ten years of physical presence and good moral character ran from the *first* event which caused the applicant to be deportable, or from the *last* such event. The controversy was ultimately settled in favor of the *last* event causing the immigrant to be deportable, on the grounds that the whole point of the statute was to give the immigrant a second chance, once he or she had been "clean" for ten years, i.e., once ten years of good moral character had been shown. *Matter of Wong,* 13 I&N Dec. 427 (BIA 1969).

There are also sound policy results, applicable in §1254(a)(2) cases, but not in most applications under §1254(a)(1), why the time passed after an immigrant was placed in deportation proceedings should count towards the ten years. In many §1254(a)(2) applications, individuals with strong family ties to the United

---

[24] This construction would not render §1229b(d) surplusage, even as applied to former §1254. When an offense was committed, the clock would stop for purposes of an application under former §1254(a)(1). Since the time in such cases starts to accumulate when physical presence begins, there would be no conflict.

CVisPDF - www.fesio.com

States became deportable for relatively minor offenses, and were
ordered deported. However, because of the hardship which their
removal would cause to their families, they were permitted by INS
to remain for many years thereafter. The BIA itself noted in
*Matter of Pena-Diaz*, 20 I&N Dec. 841 (BIA 1994), that such
continued presence, with INS' acquiescence, creates certain
expectations that the immigrant may remain, assuming continued good
behavior, and that these expectations are cognizable as a form of
hardship for purposes of suspension of deportation under (prior) 8
U.S.C. §1254(a)(2).[25] These considerations find no equivalent in
the seven year suspension provided by §1254(a)(1).

In its decision herein, like those in the related cases, the BIA
made no attempt to analyze the interaction of (new) 8 U.S.C.
§1229b(d) with (prior) §1254(a)(2). Similarly, Respondent made no
attempt in the Return and Brief in Opposition to Petition For
Habeas Corpus to refute the "plain language" argument, which was
laid out in Colonel's Petition, at ¶¶ 8 - 14. This silence must be
taken as an admission of the merit of this claim.

### V.  THE BIA ALSO ERRED IN DENYING MR. CORONEL'S MOTION TO RECONSIDER, IN JUNE OF 1993

---

[25] The case of Agado-Flores, No. B-99-160, also illustrates
this phenomenon. Agado became a lawful permanent resident in 1972.
He was convicted of possessing a small amount of marijuana in 1975,
and was ordered deported in 1976. In 1993, he filed a motion to
reopen to apply for suspension of deportation, which motion
remained pending until 1999, when the BIA denied it, on the same
basis as given herein. During all this time, Agado has remained in
the United States, with the permission of INS.

Similarly, in the case at bar, the deportation order became
administratively final in 1991, and Coronel was subject to
deportation at any time thereafter. 8 C.F.R. §103.5(a)(1)(iv)
(absent an order to the contrary, filing of a motion to reopen or
reconsider "does not stay the execution of any decision ...). Yet
Coronel, like Agado, has been permitted by INS to remain in the
U.S. while his motions were adjudicated. The fact that this took
seven years only indicates that there was merit to the motion.

In his Petition, at ¶¶ 3-4, 15, Mr. Coronel also sought review of the Board's decision of June 3, 1993, denying his motion to reconsider the decision of the BIA of February 7, 1991. [26]   In his initial appeal, his motion to reconsider, and again in his motion to reopen, he asserted that Due Process was violated by the manner in which the Immigration Judge induced him to waive his right to counsel *at the initial appearance,* by the off-the-record representations that he would be permitted to apply for relief from deportation, and would be given another hearing on the merits of his application for such relief, but, where, on realizing that he was not yet eligible for §212(c) relief, the Judge failed to give him an opportunity to retract his waiver, and ordered him deported. As argued in his initial brief, (AR:138) (emphasis added):

> The most fundamental reason why the Respondent was denied a fair hearing relates to the issue of counsel. Respondent had not previously been served with a copy of the legal aid list.  He had been led to believe that he would have a second hearing, with counsel, on his application for relief from deportation.
>
> **For that reason, and that reason alone, he waived counsel at the hearing in question.**

This claim was documented with affidavits from himself and his wife. (R:142-143,145-146). By way of corroboration, he presented the affidavit of an attorney who frequently appeared in immigration court at that time, (R:155-156), confirming, for purposes of an unrelated case, that such off-the-record discussions were common.

In denying his initial appeal and motion to remand, the BIA

---

[26]   A motion to reconsider urges that the BIA's prior decision was incorrect. *See, Matter of Cerna,* 20 I&N Dec. 399, 402 (BIA 1991) ("When we reconsider a decision, we are in effect placing ourselves back in time and considering the case as though a decision in the case on the record before us had never been entered"). Therefore, the decision denying reconsideration cannot, logically, be reviewed without reference to the original decision.

discussed, and dismissed, the affidavit from another attorney, precisely because it involved a different Immigration Judge. [27] However, the BIA did not mention the affidavits of Coronel and his wife. Rather, the Board proceeded as if the off-the-record representations set forth therein had never occurred, although no finding was made to that effect. (R:109). The BIA then analyzed the case as if the issue related solely to the denial of a continuance, without ever discussing the claim that Coronel's right to Due Process had been violated by the manner in which his waiver of counsel was obtained, and the Judge's failure to permit him to retract his waiver, once he realized that his off-the-record representations to Coronel about allowing him to apply for relief, and having another hearing, had been incorrect. (R:110).

In his motion to reconsider, Coronel reiterated his claim that his waiver of counsel was ineffective. (AR:99-100):

> ... Before going on the record, the Immigration Judge led Mr. Coronel to believe that he would be eligible for some form of relief from deportation; that he would be given an application to fill out, and that a hearing would later be held on the application ...
>
> Believing that this meant that he did not need an attorney for the preliminary proceedings, Mr. Coronel agreed to waive counsel, and proceed with the hearing unrepresented. ...
>
> However, when they were on the record, the Judge apparently discovered that Mr. Coronel was still a few weeks short of having completed seven years as a lawful permanent resident, and reneged on his pre-hearing representation that Mr. Coronel would be given an application, and another hearing, at which time he could bring counsel. Rather, the Judge proceeded with the hearing, and ordered Mr. Coronel deported. ...

--------

[27] In so doing, the BIA overlooked the fact that the affidavit referred to procedures in general in the Harlingen office, not just those of the Immigration Judge who had conducted that hearing.

> Mr. Coronel was left with no option, other than to reserve appeal. ... The appeal was timely filed, and in due time, a brief was filed. A Motion To Reopen was also filed, requesting leave to apply for relief under Section 212(c) of the Act.
>
> The Brief on appeal and in support of the motion to reopen were filed simultaneously, and documentation was included demonstrating that Mr. Coronel had been misled by the Judge, and essentially tricked into waiving his right to counsel.

In denying the motion to reconsider, the Board ignored this claim, focusing instead on the questions of whether Coronel had made out a *prima facie* case for §212(c) relief, and whether the Judge erred in not granting a continuance. (AR:82-85). The same claim, in almost exactly the same terms, was raised in Coronel's motion to reopen, (R:5-6). And in denying that motion, the BIA gave this claim exactly the same consideration as before. None. (R:2-3).

Coronel was substantially prejudiced by the Board's refusal to address his complaint that his right to counsel had been abridged. Had the case been remanded, either on the basis of his motion to reconsider, or in response to his motion to reopen, he would have been entitled to a hearing on the merits of his applications for both §212(c) relief, and suspension of deportation.[28] His equities were such that he would, in all probability, have been granted relief under one or the other of those provisions.[29]

---

[28] Further, as shown by Exhibits H and I, had the Judge rescheduled his case to give him a chance to obtain counsel, the normal scheduling procedures during that time frame were such such that his eligibility would have ripened, even without any specific "delay" tactics on the part of counsel, such as, for example, exercising the right to deny deportability, (the immigration equivalent of a plea of "not guilty"), and require a hearing at which INS would have been obliged to establish the conviction.

[29] As found by the First Circuit in *Goncalves v. Reno,* 144 F.3d 110, 128 (1st Cir. 1998), from fiscal years 1989 through 1994, "over half of all applications for § 212(c) relief were granted by

28

Given these facts, [30] the deportation orders should be vacated, and the case remanded to the BIA with instructions to grant Coronel a hearing on merits of his applications for relief.

Under similar circumstances, the Seventh Circuit found that where there had been an abridgment of the right to counsel, the case should be remanded, with instructions that the immigrant be permitted to apply for relief on a *nunc pro tunc* basis. *Batanic v. INS*, 12 F3d 612 (7th Cir. 1993) (alien who was denied right to counsel in deportation hearing which followed alien's aggravated felony conviction was entitled to file application for asylum *nunc pro tunc* to date of hearing, even though, before remand, Congress had amended asylum statute to make aliens convicted of aggravated felony ineligible to apply for asylum). [31]

---

the agency." The record demonstrates that Petitioner showed "outstanding equities" in his family ties. He also had significant equities in terms of property and employment, hardship to himself and his family, and, apart from the 1987 DWI, his otherwise clean record. Further, notwithstanding the Board's specific finding to the contrary, the amount of marijuana involved was relatively small, (between four ounces and five pounds), and his conviction was for simple possession. He had a good reputation in the community, and performed well on probation. *See,* Exhibit "F" in support of Petition for Writ of Habeas Corpus. These facts would have warranted a grant of §212(c) relief. *See, e.g., Matter of Arreguin, supra; Diaz-Resendez v. INS,* 960 F.2d 493 (5th Cir. 1992). *See also, Matter of Peña-Diaz, supra,* for a similar case in which suspension of deportation was granted under 8 U.S.C. §1254(a)(2).

[30]   The record would not, under Fifth Circuit precedent, support a finding that there were genuine issues of material fact.

[31]   *See also, Castillo-Perez v. INS*, 212 F.3d 518 (9th Cir. 2000) (appropriate remedy for ineffective assistance of counsel was a remand to BIA, with instructions to apply the law as it existed at time of alien's hearing before Immigration Judge); *Miranda-Lores v. INS,* 17 F.3d 84 (5th Cir. 1994) (To prevail on claim of ineffective assistance of counsel at deportation proceeding, alien must show ineffective representation and substantial prejudice, which occurred as result of ineffective representation).

29



**U.S. Department of Justice**

Civil Division

DVB:MJC:vdh
39-74-1679

Telephone: (202) 616-9303

April 26, 2001

**MAILED VIA FEDERAL EXPRESS**

Honorable Charles R. Fulbruge III, Clerk
United States Court of Appeals
 for the Fifth Circuit
600 Camp Street
New Orleans, Louisiana  70130

        Re:  Pedro De Lira Rangel v. John D. Ashcroft,
             U.S. Attorney General,
             Case No. 99-60766; A08 729 328

Dear Mr. Fulbruge:

        Enclosed for filing in the above-captioned matter are the
original and three (3) copies of the **Respondent's Opposition to
Petitioner's Motion to Strike and Response to Motion for
Extension of Time.**  A copy of this motion has been served upon
the petitioner's counsel as indicated in the Certificate of
Service.

                        Sincerely,

                        MARY JANE CANDAUX
                        Attorney
                        Office of Immigration Litigation
                        Civil Division
                        P.O. Box 878, Ben Franklin Station
                        Washington, D. C.  20044

Enclosures

cc:  Lisa Brodyaga, Esq.
     Attorney at Law
     17891 Landrum Park
     San Benito, TX  78586

## VI.  CONCLUSION

Petitioner Coronel has challenged two orders herein; that of June 3, 1993, and that of March 9, 2000.  The former is challenged on the basis of interference with the right to counsel, (Due Process), and the latter, on a mistake of law.  Should the Court sustain either challenge, the result would be that the order of March 9, 2000, [32] would be vacated, and the case remanded to the BIA with instructions that proceedings be reopened.  Once the case was reopened, Coronel could pursue both applications for relief, to wit, under prior §212(c) of the Act, and for suspension of deportation, under prior 8 U.S.C. §1254(a)(2).

It is therefore urged that the deportation orders of June 3, 1993 and March 9, 2000, be vacated, and the case be remanded to the BIA with instructions that the case be reopened for further proceedings on both of Mr. Coronel's applications for relief.

Respectfully Submitted,

Lisa S. Brodyaga, Esq.
REFUGIO DEL RIO GRANDE
17891 Landrum Park Road
San Benito, Texas 78586
(956) 421-3226
Texas Bar:  03052800
Fed. ID:  1178

### CERTIFICATE OF SERVICE

I hereby certify that copies of the foregoing, together with Exhibits H and I, were mailed, first-class postage prepaid, to Heather Phillips, P.O. Box 878, Ben Franklin Station, Washington, D.C. 20044, this 4th day of May, 2001.

---

[32] Vacating the earlier order would, of necessity, also void the latter one.

30