19

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
IN BROWNSVILLE, TEXAS

United States District Court
Southern District of Texas
FILED
MAY 0 4 2001
Michael N. Milby
Clerk of Court

| | |
|---|---|
| FELIX CORONEL-CARDENAS, ) | |
| INS NO. A 36-599-075 ) | |
| ) | |
| Petitioner, ) | CIVIL CASE NO: B00-058 |
| v. ) | |
| E.M. TROMINSKI, ) | RESPONDENTS' SUPPLEMENTAL |
| DISTRICT DIRECTOR AND JOHN D. ) | PLEADING PURSUANT TO THE |
| ASHCROFT U.S. ATTORNEY GENERAL ) | COURT'S REQUEST AT THE |
| Respondents ) | MARCH 20, 2001 HEARING |
| _____ ) | |

Pursuant to the Court's oral request, made at the conclusion of the evidentiary hearing held on March 20, 2001, Respondents hereby submit supplemental briefing with respect to the issues raised in this case.

I. **Coronel has Failed to Demonstrate a Due Process Violation of his Right to Counsel**

Coronel alleges that at his deportation hearing on May 18, 1987, "the Immigration Judge tricked him into waiving counsel," and that this alleged deprivation of counsel "violated Due Process." Pet. for Writ of Habeas Corpus at 2. To establish a violation of a right to counsel in a deportation proceeding, an alien must show: 1) ineffective representation/denial of representation; and 2) substantial prejudice which occurred as a result of the ineffective representation. <u>Ogbemudia v. INS</u>, 988 F.2d 595, 598 (5th Cir. 1993); <u>Prichard-Ciriza v. INS</u>, 978 F.2d 219, 222 (5th Cir. 1992) (plaintiff must demonstrate prejudice

which implicates the fundamental fairness of the proceeding). Coronel has not shown that the immigration judge "tricked" him into waiving counsel. Neither has Coronel shown, nor can he show, prejudice stemming from any alleged conversation and/or assurances given by the immigration judge off the record, regardless of whether these caused him to waive his right to counsel. Finally, there is no constitutional violation in the denial of purely discretionary relief, such as a waiver of deportation pursuant to former INA § 212(c), 8 U.S.C. § 1182(c). Finlay v INS, 210 F.3d 556 (5th Cir. 2000). Failure to receive relief that is purely discretionary in nature does not amount to a deprivation of a liberty interest. Connecticut Bd. of Pardons v. Dumschat, 452 U.S. 458, 465 (1981). Therefore, there has been no due process violation of Coronel's right to counsel in his deportation proceeding.

    A.    **The Record Fails to Support Coronel's Contention that he was Tricked into Waiving Counsel**

Coronel has proffered no evidence supporting his allegation that he was "tricked" into waiving counsel to his detriment at his hearing. First, Coronel's Notice of Master Calendar Hearing, which informed him of the date of his hearing before the immigration judge, specifically provided him with notice that he was "expected to plead to the allegations in the charging document at this hearing [and that] [i]n addition, all applications and motions for relief should be submitted." A.R.

2

182. Nor does the transcript of Coronel's hearing support his allegations of impropriety on the part of the immigration judge. Instead, the transcript reveals that the immigration judge clearly asked Coronel whether he wanted to obtain counsel, or whether he wished "to go forward this date and speak for [himself]," to which Coronel replied, "[r]epresent myself and go forward." A.R. 175. As the BIA noted in its February 7, 1991 decision, "[t]he transcript of the hearing reveals that the respondent understood the nature of the proceedings against him, and he does not show how he would have benefitted by having an attorney present at the hearing." A.R. 110.[1]

> B. **Coronel was not Eligible for Relief at the Time of the Hearing, and a Request for a Continuance Simply to Accrue Time for Eligibility is not "Good Cause" for a Continuance**

Even if Coronel had somehow been tricked into waiving counsel, as of the date of his hearing, May 18, 1987, Coronel was ineligible for any relief whatsoever. <u>Accord</u> Pet. for Writ of Habeas Corpus at 2, FN 1 ("At the time the Judge ordered him deported, Mr. Colonel [sic] <u>lacked a few weeks of eligibility for 212(c) relief</u>.") (emphasis added). Therefore, even if Coronel had had counsel present, a request for a continuance simply to accrue time to establish eligibility for relief is not "good

---

[1] Thus, contrary to Coronel's contention that the BIA did not address Coronel's claim that his right to counsel was violated, Pet. for Writ of Habeas Corpus at 2-3, the BIA squarely addressed Coronel's claim and properly found it meritless.

3

cause" for a continuance. See 8 C.F.R. § 240.45 ("After the commencement of the hearing, the immigration judge may grant a reasonable adjournment . . . <u>for good cause shown</u>, upon application by the respondent.") (emphasis added). Because Coronel was ineligible for any relief at the time of his hearing, he was in no way prejudiced by his lack of counsel at the hearing. Therefore, Coronel cannot establish a due process violation. See <u>Prichard-Ciriza</u>, 978 F.2d at 222 (No violation of due process where "there is no indication that there were any grounds for relief available to Prichard <u>at the time of the deportation hearing</u> which an attorney might have brought to the IJ's Attention.")

    **C. The BIA Subsequently Considered Coronel's Application for Relief Pursuant to former INA § 212(c), and Determined that Coronel had Failed to Establish Prima Facie Eligibility for that Relief**

Any attempt by Coronel to demonstrate prejudice is further undermined by the fact that the BIA ultimately considered Coronel's claim for relief under former INA § 212(c), 8 U.S.C. § 1182(c), and rejected it. Following his hearing on May 18, 1987, Coronel filed an appeal with the BIA, and subsequently added a motion to reopen with the BIA based on newly accrued eligibility for 212(c) relief. A.R. 112, 168. The BIA reviewed his underlying § 212(c) application and accompanying affidavits and found that Coronel had failed to make "a prima facie showing that he merits this relief in the exercise of discretion." A.R. 111.

4

The BIA noted that Coronel had been convicted of a drug offense, "which generally requires a showing of outstanding equities," and that Coronel had "not presented evidence of outstanding equities, or indeed, any factual allegations which might indicate that he is worthy of a favorable exercise of discretion." Id.

Moreover, Coronel received an additional review by the BIA of his request for 212(c) relief. On November 24, 1993, over one and a half years after the BIA's February 7, 1991 decision, Coronel filed a motion to reconsider with the BIA requesting once again that the BIA grant his motion to reopen deportation proceedings to allow him to apply for 212(c) relief. A.R. 99. On June 3, 1993, the BIA denied Coronel's motion to reconsider. In its decision, the BIA once again evaluated whether Coronel had demonstrated not only statutory eligibility for 212(c) relief, but also whether he merited a favorable exercise of discretion, and found that Coronel had not met his burden of proof. A.R. 84. In sum, after evaluating relevant factors including Coronel's U.S. citizen wife and children, employment history, and length of residence in the U.S., the BIA found that Coronel had "failed to establish evidence of unusual or outstanding equities." Id.

Therefore, Coronel cannot establish prejudice stemming from his lack of counsel at his hearing before the immigration judge, because notwithstanding the fact that he lacked eligibility for 212(c) relief at the time of the hearing, the BIA later

5

considered whether Coronel had established prima facie eligibility for such relief and found that he had failed to do so.

Finally, Coronel did not file a petition for review in the Fifth Circuit from the BIA's decision with respect to 212(c) relief (8 U.S.C. § 1105a(a)(1994)), or otherwise further pursue 212(c) relief with the BIA. Instead, he filed a motion to reopen with the BIA on June 30, 1993, which consisted solely of a request to apply for suspension of deportation. A.R. 22; accord Pet. for Writ of Habeas Corpus at 3 (Mr. Coronel filed a motion to reopen to seek suspension of deportation.") (emphasis added). As a result, Coronel abandoned his request for relief under former INA § 212(c).[2] Even if he had appealed the BIA's determination with respect to his eligibility for 212(c) relief,

---

[2] Coronel appears to argue that the BIA's June 3, 1993 denial of his motion to reconsider should be consolidated with the BIA's March 9, 2000 denial of his motion to reopen for purposes of seeking judicial review over any and all issues presented in these separate motions. See Pet. for Writ of Habeas Corpus at 3 (referring to Pierre v. INS, 932 F.2d 418 (5th Cir. 1991), overruled by Stone v. INS, 115 S.Ct. 1537 (1995)). However, Pierre is inapposite, because it dealt with an appeal to the BIA and subsequent motion to reconsider that both involved the same issues - whether the alien in that case had established eligibility for withholding of deportation and/or asylum. In this case, Coronel's motion to reconsider involved his application for 212(c) relief, for which the BIA found him ineligible, while his subsequent motion to reopen involved a totally different ground of relief, suspension of deportation under former INA § 1254(a)(2). Consequently, Coronel abandoned his request for relief under 212(c) when he failed to file a petition for review from the BIA's finding that he was ineligible for such relief.

further review of the BIA's discretionary decision with respect to Coronel's lack of outstanding equities is precluded in this Court by IIRIRA § 309(c)(4)(E), which provides that "there shall be no appeal of any discretionary decision under section 212(c)." See Moosa v. INS, 171 F.3d 994 (5th Cir. 1999); Palma-Rojas v. INS, 244 F.3d 1191 (9th Cir. 2001) (no review of discretionary decision under 212(c)).

II. **Coronel's Accrual of Time for Purposes of Suspension of Deportation Ended with the Issuance of his Order to Show Cause.**

In its March 9, 2000 decision, the BIA correctly found that "service of the Order to Show Cause ends the period of continuous physical presence for purposes of suspension of deportation," and that Coronel was therefore ineligible for relief. A.R. 2. As the BIA noted, "inasmuch as the respondent entered the Untied States in July of 1980, committed the drug offense April 7, 1983,"[3] and the OSC "was filed with the Immigration Court April 17, 1987," Coronel lacked the 10 years of continuous physical presence required for suspension of deportation under the

---

[3] It is unclear how the BIA arrived at this date, as Coronel's OSC indicates that he was convicted of his crime on April 27, 1983, A.R. 184, and actually committed the crime on January 21, 1983. A.R. 151. At any rate, any error is harmless, given that as Coronel's OSC was filed in 1987, and he entered the United States in 1980, it is factually impossible for him to have accrued ten years' physical presence after his conviction and prior to the filing of the OSC. Therefore, under IIRIRA § 309(c)(5), Coronel is ineligible for suspension of deportation. See Part II-A below.

7

provisions of former INA § 244(a)(2). <u>Id.</u>

    **A.   In Enacting IIRIRA, Congress Intended to Limit Relief for Criminal Aliens Such as Coronel**

IIRIRA replaced former suspension of deportation relief found at INA § 244(a)(2), 8 U.S.C. § 1254(a)(2), with a new form of relief called cancellation of removal. <u>See</u> INA 240A, 8 U.S.C. § 1229b. The IIRIRA amendments were intended to limit the categories of aliens eligible for such relief and to limit the circumstances under which relief may be granted. <u>Id.</u> For example, under INA 240A, aliens face a longer physical presence requirement, a more stringent standard of hardship, and omission of consideration of hardship to the aliens themselves. <u>Id.</u>

In addition, the immigration reforms implemented by IIRIRA were designed to remove the incentive for aliens to prolong their cases by ending the accrual of time in residence for suspension of deportation when deportation proceedings were commenced. The legislative history reflects that Congress was displeased with the ability of aliens to protract the deportation hearing process and thereby accrue time that could be counted toward satisfaction of the continuos physical presence requirement. <u>See</u> H.R. Rep. No. 104-469(I) (1996), <u>available in</u> 1996 WL 168955, at 390 (noting that "[s]uspension of deportation is often abused by aliens seeking to delay proceedings until 7 years have accrued[,] . . . even after they have been placed in deportation proceedings."). This dissatisfaction evidently led Congress to

8

direct that the accrual of qualifying time would stop with the issuance of the notice to appear (formerly known as the order to show cause). <u>See</u> H.R. Rep. No . 104-879 (1997) (noting that reforms in the IIRIRA's title III included ending the "accrual of time-in-residence on the date the alien is placed into removal proceedings, thus removing the incentive for aliens to prolong their cases in the hope of remaining in the United States long enough to be eligible for relief.".

Therefore, the legislative history clearly indicates that Congress intended to restrict relief for aliens such as Coronel. This legislative intent combined with a plain reading of the statutory language supports the BIA's finding that Coronel is unable to satisfy the statutory physical presence requirement now in effect, and is consequently ineligible for suspension of deportation.

    B.    **The Plain Language of IIRIRA § 309(c)(5) Calls for the Stop-Time Rule of 240A(d)(1) to Apply to Coronel's OSC**

Coronel appears to argue that while the stop-time rule of INA § 240A may apply to applications for suspension of deportation under former 8 U.S.C. § 1254(a)(1) involving <u>non-criminal</u> aliens, Congress did not intend to apply this harsh rule to <u>criminal</u> aliens applying for suspension of deportation under former 8 U.S.C. § 1254(a)(2). Pet. Mot. for Summ. Judge. at 5-10. Not only is this argument - that Congress would choose to treat criminal aliens more leniently than non-criminal aliens -

9

nonsensical, the plain language of the relevant statute holds otherwise. Instead, with respect to suspension of deportation under both former 8 U.S.C. § 1254(a)(1) & (2), under the transition rules imposed by IIRIRA § 309(c)(5)(A), the accrual of time for purposes of the physical presence requirement terminates with the issuance of the OSC.

First, IIRIRA § 309(c)(5)(A) expressly provides "paragraphs (1)and (2) of section 240A(d) of the Immigration and Nationality Act (relating to continuous residence or physical presence) shall apply <u>to orders to show cause</u> . . . issued before, on, or after the date of the enactment of this Act" (emphasis added). Notably, IIRIRA § 309(c)(5)(A) does not state that the guidelines related to calculating continuous physical presence found in 240A(d) shall apply to <u>criminal convictions</u>, but rather only applies these guidelines to the orders to show cause of those aliens requesting suspension of deportation under former 8 U.S.C. § 1254(a)(1) & (2).

Turning then, to INA § 240A(d), that provision provides - *with respect to orders to show cause* - that "any period of continuous residence or continuous physical presence in the United States shall be deemed to end when the alien is served [an order to show cause]." Therefore, a plain reading of the two statutory provisions <u>together</u>, rather than in isolation, as Coronel suggests, supports the BIA's finding that Coronel's

10

accrual of time ended with the filing of his OSC on April 17, 1987. See Lujan-Armendariz v. INS, 222 F.3d 728, 744 (9th Cir. 2000) (repeal by negative implication to be avoided, and "[i]f the [two] statutes are capable of coexistence, it is the duty of the courts to regard each as effective."). Although under former 8 U.S.C. § 1254(a)(2), Coronel began to accrue time towards continuous physical presence following his conviction on April 29, 1983, that accrual of time ended with the filing of his OSC on April 17, 1987. As such, Coronel lacked the requisite physical presence necessary to establish eligibility for suspension of deportation.[4]

---

[4] Alternatively, given Congress' intention to curtail relief for criminal aliens such as Coronel, see Part II-A above, it is entirely possible that "no-one would ever qualify for relief under § 1254(a)(2)." Pet. Mot. for Summ. Judge. at 8. That is, Congress intended to cut off suspension of deportation relief for criminal aliens such as Coronel be stopping the accrual of time before it could even begin. Given Congress' intention in revising the immigration laws, this would in no way be an "absurd" result, as Petitioner claims. Id.

11

## III. Conclusion

Based upon the foregoing, Petitioner's request for Writ of Habeas Corpus must be denied and dismissed.

```
                              Respectfully submitted,

                              MERVYN MOSBACKER
                              United States Attorney
                              Southern District of Texas
                              Lisa Putnam
                              Special Assistant U.S. Attorney
                              P.O. Box 1711
                              Harlingen, Texas  78551
                              (956) 389-7051

                              David V. Bernal
                              Assistant Director
                              Office of Immigration Litigation


                              HEATHER PHILLIPS
                              Attorney
                              Office of Immigration Litigation
                              P.O. Box 878, Ben Franklin Station
                              Washington, DC  20044
                              (202) 616-9343
```

Date:  May 3, 2001              Attorneys for Respondent

12

## **CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing was served by first class mail upon Lisa Brodyaga, Esquire, this 3d day of May, 2001:

Lisa Brodyaga, Esquire
17891 Landrum Park Road
San Benito, Texas 78586

HEATHER R. PHILLIPS

13