20

United States District Court
Southern District of Texas
FILED

MAY 15 2001

Michael N. Milby
Clerk of Court

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

FELIX CORONEL-CARDENAS,

Petitioner,

v.

E.M. TROMINSKI,

Respondent.

No. CA B-00-058

# PETITIONER'S RESPONSE TO RESPONDENTS' SUPPLEMENTAL PLEADING

Lisa S. Brodyaga, Esq.
Counsel For Petitioner
17891 Landrum Park Rd.
San Benito, Texas 78586
(956) 421-3226

May 10, 2001

ClibPDF - www.fastio.com

Petitioner, through counsel, respectfully responds to "Respondents' Supplemental Pleading Pursuant to the Court's Request at the March 20, 2001 Hearing," hereinafter called Respondents' "Supplemental Pleading," and cited, by page, as (INS:__).

**I. INS' ARGUMENTS REGARDING CORONEL'S CLAIM OF ABRIDGMENT OF HIS STATUTORY RIGHT TO COUNSEL, AND THE SUBSTANTIAL PREJUDICE RESULTING THEREFROM, ARE WITHOUT MERIT.**

INS first makes a number of arguments relating to Mr. Coronel's claim that his waiver of counsel was not "competently and understandingly made," as required by *Matter of Gutierrez,* 16 I&N Dec. 226,228 (BIA 1977), citing *Burquez v. INS,* 513 F.2d 751 (10th Cir. 1975). These arguments miss the point.

**A. THERE ARE A VARIETY OF LEGAL INFIRMITIES IN INS' CLAIM THAT THERE IS NO LIBERTY INTEREST IMPLICATED, AND THUS NO COGNIZABLE DUE PROCESS VIOLATION, IN A DENIAL OF COUNSEL IN A DEPORTATION HEARING WHERE PETITIONER WAS PREJUDICED BY THE LOSS OF THE OPPORTUNITY TO APPLY FOR DISCRETIONARY RELIEF WHICH, UNDER BIA PRECEDENT, HE WOULD PROBABLY HAVE WON HAD HE BEEN ABLE TO SEEK SUCH RELIEF.**

First, INS makes seemingly contradictory claims regarding the right to counsel in deportation hearings. INS correctly notes, (INS:1), that under Fifth Circuit precedent Due Process violations, such as violations of the right to counsel, are grounds for reversal only when coupled with substantial prejudice. In the context of a waiver of counsel which is not competently and understandingly made, the Fifth Circuit has formulated the prejudice requirement as a showing that the outcome of the hearing "might have been different." [1] In his Post-Hearing Memorandum, hereinafter cited by page as (PET:__),

---

[1] *Partible v. INS,* 600 F.2d 1094 (5th Cir. 1979) (Where waiver of counsel at a deportation hearing was not competently and understandingly made, and where the outcome of the proceeding might have been different if counsel had been present, the alien was entitled to a new hearing.). *See also, U.S. v. Encarnacion-Galvez*, 964 F.2d 402,407 (5th Cir. 1992) ("By a showing of prejudice, we mean that there was a reasonable likelihood that but for the errors complained of the defendant would not have been deported.")

ClibPDF - www.fastio.com

at pages 4,7-10, and 28, Mr. Coronel made such a showing. [2]

In its Supplemental Pleading, INS adds a new twist, arguing that there can be no cognizable Due Process violation because "[f]ailure to receive relief that is purely discretionary in nature does not amount to a deprivation of a liberty interest." (INS:2). This confuses entitlement to **receive** relief (which does not exist) with the opportunity to **request** it. Notably, INS cites no deportation cases in support of this proposition and none are known to counsel. Indeed, cases such as *Batanic v. INS*, 12 F3d 612 (7th Cir. 1993) demonstrate that this is not the law. In *Batanic,* the interference with the right to counsel resulted in the loss of the right to apply for asylum, which is also a form of discretionary relief, [3] yet the Court remanded for a *nunc pro tunc* hearing on asylum.

INS often cites *INS v. Yueh-Shaio Yang*, 117 S.Ct. 350, 353 (1996), in support of similar claims. [4] In *Yang*, the Court examined the pertinent statute to determine what factors could be considered in adjudicating an application for discretionary relief, and concluded

---

[2] Specifically, Coronel demonstrated that, under the normal procedures in effect at that time, if the Judge had continued the case for counsel, he would have accumulated the requisite seven years before the case proceeded. He also showed that, if given an opportunity to apply for §212(c) relief, his equities were such that, under BIA precedent, he would have merited relief.

[3] *See,* 8 U.S.C. 1158(b)(1) ("The Attorney General **may** grant asylum to an alien who has applied...") (emphasis added)

[4] *See, for example, Requena-Rodriguez v. Pasquarell,* 190 F.3d 299, 306,n.25 (5th Cir. 1999), where INS urged the Court not to consider the immigrant's Equal Protection claim. However, there is a great difference between a claim that Due Process (or Equal Protection) was violated by the denial of the opportunity to seek discretionary relief *per se*, and a claim that Due Process was violated in the abridgment of the right to counsel, where the prejudice involved the loss of the opportunity to seek such relief.

that the Attorney General had "unfettered discretion" *in deciding what factors to consider.* That her exercise of discretion was not immune to scrutiny for errors of law, however, is shown by the very issue under consideration therein! [5] And even in the context of the suspension of a criminal sentence, or application for a pardon, no known court has ever upheld a procedure, or erroneous interpretation of law, which impermissibly precluded someone from *requesting* such relief, on the grounds that the decision to *grant or deny* it was "purely discretionary." [6]

**B. INS ALSO MISSES THE POINT OF THE DEPRIVATION OF COUNSEL CLAIM.**

Second, INS notes, (INS:2), that the notice of hearing states that Coronel would be expected to plead to the allegations. As seen by Exhibits H and I, this boilerplate language appeared in all Notices of Master Calendar Hearing, but such pleadings were not required where continuances were granted for counsel, nor in the first appearance with counsel, if the attorney requested time to prepare.

INS then follows the BIA in referring only to the transcript in determining whether Mr. Coronel's right to counsel was abridged. (INS:3). However, as previously shown, (PET:6-8), while one may be

---

[5] *See also, Gonzalez-Torres v. INS,* 213 F.3d 899 (5th Cir. 2000) (BIA's determination that aliens failed to prove that they had accrued seven years' continuous presence, as required for suspension of deportation, was not precluded from judicial review by section of IIRIRA precluding judicial review of discretionary decisions with respect to denials of motions to suspend deportation; determination was not matter of agency discretion, but involved application of law to factual determinations).

[6] *See, Warden, Lewisburg Penitentiary v. Marrero,* 417 U.S. 653,663 (1974) (statute retroactively removing parole constitutionally impermissible as an *ex post facto* law); *Lindsey v. Washington*, 301 U.S. 397 (1937) (statute changing maximum sentence to mandatory sentence for offense committed before enactment is impermissible *ex post facto* law).

limited to the record of proceedings in an **appeal**, one is specifically required to submit evidentiary material, including affidavits, such as were filed by Coronel with respect to his claim that his right to counsel was abridged, in support of a **motion to remand (reopen)**.[7] The BIA's failure to consider these affidavits in adjudicating Coronel's motion to remand was therefore error.

## C. INS ALSO MISSES THE POINT OF THE DEPRIVATION OF COUNSEL CLAIM, CHARACTERIZING IT AS A "REQUEST FOR A CONTINUANCE SIMPLY TO ACCRUE TIME FOR ELIGIBILITY [FOR §212(c) RELIEF]"

INS also characterizes the counsel claim as a "request for a continuance simply to accrue time for eligibility" for §212(c) relief. (INS:3). It is a fact that Coronel only "lacked a few weeks of eligibility for 212(c) relief," as both he and INS have pointed out, *Id.* However, that was not the reason that Mr. Coronel had written to request a continuance, nor the reason he had intended, when he went into the hearing, to pursue that request.

To the contrary, the record clearly demonstrates that Coronel was unaware of the seven year requirement when he first appeared before the Immigration Judge. Rather, had the Judge entertained his request, the "good cause shown" required by 8 C.F.R. §242.13 (1989), would have been his desire to be represented by counsel. As he testified, it was his intent when he went into the hearing to request a continuance **for that purpose**. As a side effect, it would have resulted in his accumulating the time required to seek §212(c) relief. But that was not, and could not have been, his intention

---

[7] *See,* 8 C.F.R. §103.5(a) (1988) (A motion to reopen ... shall be supported by affidavits or other evidentiary material."); *Matter of L-V-K-*, Int. Dec. 3409 (BIA 1999) ("A motion to reopen that is filed during the pendency of an appeal may be styled as a motion to remand. 8 C.F.R. §3.2(c)(4). In substance, however, it remains a motion to reopen.").



ClibPDF - www.fastio.com

at that time, since he was unaware of seven year requirement.

**D. THE BIA'S FINDING THAT MR. CORONEL DID NOT MAKE A *PRIMA FACIE* SHOWING OF OUTSTANDING EQUITIES DOES NOT NEGATE THE FACT THAT, UNDER BIA PRECEDENT, HIS U.S. CITIZEN WIFE, AND TWO U.S. CITIZEN DAUGHTERS, DO CONSTITUTE A *PRIMA FACIE* SHOWING OF SUCH EQUITIES.**

INS also notes that the BIA concluded that Mr. Coronel had not made a *prima facie* showing of outstanding equities, as required to reopen proceedings to permit him to apply for §212(c) relief. (INS:4-5). That is exactly Mr. Coronel's point. This finding of the BIA was clearly in error. As previously shown, (PET:10-11), the equities *demonstrated by the record* at that time do constitute "outstanding" equities under BIA precedent. These included his U.S. citizen wife and two minor U.S. citizen daughters. In fact, in *Matter of Arreguin,* 21 I&N Dec. 38, 41 (BIA 1995), the BIA specifically found that two minor U.S. citizen children were an "outstanding equity." Here, Coronel not only had the two children, but also a U.S. citizen wife. INS has pointed to no case, and none is known to the undersigned, where the BIA concluded that a U.S. citizen spouse, and minor U.S. citizen children, did **not** constitute outstanding equities for these purposes. [8]

---

[8] More accurately, it should be stated that in no known case was such a finding made, and not overturned on appeal, as occurred, for example, in *Diaz-Resendez v. INS,* 960 F.2d 493,496-97 (5th Cir. 1992) (BIA committed reversible error in finding that respondent had not shown outstanding equities, where it had found such equities on much weaker facts in other cases). *Ghassan v. INS*, 972 F.2d 631 (5th Cir. 1992), also supports this conclusion in a backhanded manner. In *Ghassan,* an LPR married a U.S. citizen, who had a minor son, after being placed in deportation proceedings. Although finding that these were outstanding equities, *id.* at 634, 638, the BIA discounted the hardship to the wife, and to her son, because she had married him with knowledge that he might well be deported. The Fifth Circuit agreed. *Id.* at 634:

> The BIA then considered the factors weighing in favor of granting waiver to Ghassan, most notably the extent to

**E. PETITIONER DID NOT "ABANDON" HIS QUEST FOR §212(c) RELIEF BY FILING A MOTION TO REOPEN, INSTEAD OF SEEKING REVIEW OF THE DENIAL OF HIS MOTION TO RECONSIDER; AND THE COURT'S JURISDICTION OVER THIS ASPECT OF HIS PETITION IS UNAFFECTED BY IIRIRA §309(c)(4)(E).**

INS next argues, (INS:6), that by filing a motion to reopen, rather than a petition for review, Coronel abandoned his deprivation of counsel claim, and with it, his quest for §212(c) relief. INS also urges, (INS:7), that IIRIRA §309(c)(4)(E), providing that "there shall be no review of any discretionary decision under section 212(c)," bars review of this claim. Both claims are without merit.

Petitioner previously addressed the "abandonment" issue, (PET:12-16), which is controlled by *U.S. ex rel Marcello v. INS,* 634 F.2d 964,971 (5th Cir. 1981), read together with *Pierre v. INS,* 932 F.2d 418 (5th Cir. 1991). Nor was *Pierre* limited to later motions that "involved the same issue," (INS:6,n.2). As held therein, at 421:

> The D.C. Circuit took a third approach in Attoh v. Immigration and Naturalization Service, 606 F.2d 1273 (D.C.Cir.1979). Like the Third Circuit, the D.C. Circuit recognized that Bregman could result in successive, frivolous motions to reconsider or reopen. The court thus adopted Bregman "only insofar as it implicitly recognizes that intervening good faith petitions for administrative relief may toll or suspend the running of the time limit." Id. at 1276 n. 15.
>
> We are persuaded by the D.C. Circuit's course in Attoh. [9]

---

> which his wife and her son depended upon him and the hardship they would suffer if he were deported, which would be exacerbated by the fact that United States law would prevent them from traveling to Lebanon with him. The BIA agreed with the IJ, however, that the wife's hardship was lessened by her prior knowledge of possible deportation.

[9] Nor does it appear in *Attoh* that the issues raised in the subsequent motions were identical to those raised at the initial hearing. Rather, as the Court noted, *id.* at 1277-78:

Thus the test is whether the 1993 motion to reopen was an "intervening good faith petition[] for administrative relief" not whether it was based on the same issue. [10] Clearly, it met that test.

And INS' argument that IIRIRA §309(c)(4)(E) divests this Court of habeas jurisdiction over all issues involving discretionary relief was made, and lost, in *Requena-Rodriguez v. Pasquarell,* 190 F.3d 299,305 (5th Cir. 1999) (footnotes omitted) (emphasis added): [11]

> ... The transitional provisions in IIRIRA § 309(c)(4) declare only that **"there shall be no appeal" of decisions about discretionary relief or in criminal aliens' cases. IIRIRA § 309(c)(4)(E), (G), 110 Stat. 3009-626 (emphasis added). These provisions refer to direct appeals to the circuit courts, see Lerma de Garcia, 141 F.3d at 216-17, rather than to habeas jurisdiction in the district courts.** Another relevant provision, AEDPA § 440(a), which we have found to "differ[ ] only trivially" from IIRIRA § 309(c)(4)(G), says that final deportation orders of criminal aliens "shall not be subject to review by any court." ... This, while slightly more emphatic, can also be construed as normal judicial review, rather than collateral review.

It is therefore submitted that INS' arguments do not demonstrate

---

> Having examined all the circumstances of this case, we are persuaded that we are dealing not with an isolated formal departure from prophylactic rules which can be relegated to insignificance by the balance of the proceedings, but rather with a series of mutually compounding errors that cannot be ignored.

[10] And even if it were so limited, the 1993 motion was not limited to suspension of deportation. Although he had nothing "new" on that point, and therefore could not raise it as an independent grounds for reopening, the claim was reiterated as a discretionary factor. *See,* (R:5-6,10-11), and (PET:14, n.19), "the counsel issue was also raised in Coronel's 1993 motion to reopen, and ignored in the March 9, 2000, denial of that motion...".

[11] *See also, Gonzalez-Torres,* discussed *supra*, at p.3, n.5.



ClibPDF - www.fastio.com

that the Court lacks jurisdiction over the June, 1993 order. Much less do they refute Coronel's showing that his waiver of counsel was not "knowingly, intelligently, and competently made," as required by *Matter of Gutierrez, supra,* at 228, and that he was substantially prejudiced thereby.

Specifically, upon discovering that Coronel was not yet eligible for §212(c) relief, and that his pre-hearing representations that Coronel would be given an application, and a second hearing, at which he could bring counsel, to determine whether he would be allowed to remain in the U.S., were incorrect, the Judge should have given Coronel an opportunity to retract his waiver of counsel. Had he done so, under the normal course of such hearings at that point in time, Coronel would have accumulated the requisite seven years by the time the hearing went forward, and, under BIA precedent, he stood an excellent chance of gaining §212(c) relief in the exercise of discretion. This establishes the requisite prejudice, under cases such as *Partible v. INS, supra.*

## II. INS' ARGUMENTS REGARDING CORONEL'S SUSPENSION APPLICATION

Finally, INS attempts to defend the BIA's conclusion that Coronel is not statutorily eligible for relief under 8 U.S.C. §1254(a)(2).

First, INS argues that Congress **intended** to limit the ability of persons such as Coronel to seek suspension of deportation under §1254(a)(2). This claim is allegedly grounded in the legislative history of the "stop-time" rule. However, the language cited specifically addresses concerns about (former) 8 U.S.C. §1252(a)(1), the so-called "seven-year" suspension of deportation. *See,* H.R.Rep. No. 104-469(I) (1996), *available in* 1996 WL 168955, at 390, as quoted at (INS:8), (emphasis added):

> Suspension of deportation is often abused by aliens



ClibPDF - www.fastio.com

> seeking to delay proceedings **until 7 years have accrued** ... even after they have been placed in deportation proceedings.

This quotation clearly refers to suspension under §1254(a)(1), which requires a showing of seven years of physical presence (and good moral character).[12] It contains nothing to indicate that the speaker had any concerns about, much less that he was attempting to address, any equivalent type of abuse relating to applications for suspension under §1254(a)(2), which requires ten years of physical presence (and good moral character).

As previously discussed, (PET:24-25), the policy considerations underlying §1252(a)(1) ("seven-year suspension"), and §1252(a)(2) ("ten-year suspension"), are quite different. The former was generally accessed by undocumented immigrants who had remained in the United States for such lengthy periods of time that they had established deep roots here, and who asserted that their deportation would cause extreme hardship to U.S. citizen and LPR family members. By contrast, §1252(a)(2) was utilized by those immigrants, generally, those who were or had been lawful permanent residents, who made a serious mistake, such as would subject them to deportation, but who had demonstrated through ten or more years of good conduct that they had learned from their mistakes, and whose deportation would cause even greater hardship to their families than those seeking seven-year suspension.

For this reason, the manner in which the pertinent time period is

---

[12] The quotation found at (INS:9) ("ending the 'accrual of time-in-residence on the date the alien is placed into removal proceedings'"), does not specifically reference the "seven-year" requirement. Nonetheless, under the "whichever is earliest" clause of the stop-time rule, it would apply only to situations where the applicant was placed in proceedings prior to the commission of any offense constituting grounds for deportation. Typically, this only occurred in "seven-year" suspension cases, which rarely involve any type of criminal misconduct, let alone offenses of sufficient gravity to constitute grounds for deportation.



ClibPDF - www.fastio.com

calculated differs. In §1252(a)(1), it is counted backwards, from the date of the application, (or, under the stop-time rule, from the earliest of the qualifying acts, which was typically the service of the OSC). In §1252(a)(2), it is counted forward, from the event which caused the LPR to be subject to deportation, generally, as here, the criminal conviction.

INS also insists that the "plain language" of IIRIRA §309(c)(5) calls for the stop-time rule to apply to Coronel's OSC. (INS:9). Said section simply specifies that OSCs are documents within the contemplation of the stop-time rule. It does not change the plain language of §1229b(d), to the effect that the clock is stopped by the **earliest** of the events specified therein. Here, the earliest event was the commission of the underlying offense. Coronel acknowledges that this stopped the clock for purposes of an application under §1252(a)(1), where time is counted backwards. However, as he has repeatedly noted, and as INS has chosen to ignore, it does not stop the clock for purposes of an application under §1252(a)(2), which does not start running until **after** the offense is committed, specifically, when the conviction is entered.

In this context, INS quotes only that portion of INA §240A(d) [8 U.S.C. §1229b(d)], referencing the service of the charging document, and omits the rest of the sentence. (INS:10):

> [A]ny period of... continuous physical presence in the United States shall be deemed to end when the alien is served [an order to show cause].

However, the sentence quoted by INS does not end at that point. Rather, it continues as follows (emphasis added):

> [A]ny period of... continuous physical presence in the United States shall be deemed to end when the alien is served [an order to show cause] or **when the alien has committed an**



ClibPDF - www.fastio.com

> **offense referred to in section 212(a)(2)** [8 U.S.C. §1182(a)(2)] that renders the alien... removable from the United States under section 237(a)(2) [8 U.S.C. 1227(a)(2)] ... **whichever is earliest.**

INS follows this truncated quotation by claiming that the two provisions (§1229b(d), the "stop-time" rule, and IIRIRA §309(c)(5)(A), which added the service of OSCs as events which can stop the accrual of time), must be read together, "rather than in isolation, as Coronel suggests ..." (INS:10), and supports this claim with a quotation from *Lujan-Armendariz v. INS,* 222 F.3d 728,744 (9th Cir. 2000), as quoted at (INS:11):

> [R]epeal by negative implication to be avoided, and "[i]f the [two] statutes are capable of coexistence, it is the duty of the courts to regard each as effective."

This is exactly Coronel's point. INS' interpretation would make it impossible for anyone ever to qualify for the ten-year suspension of deportation, by stopping the clock before it had started to keep time. INS has presented nothing to indicate that Congress intended to retroactively repeal §1252(a)(2) in such an oblique manner, and, as demonstrated by *Lujan-Armendariz*, an interpretation which would effect a "repeal by negative implication [is] to be avoided."

## III. CONCLUSION

Petitioner has challenged two orders herein; that of June 3, 1993, and that of March 9, 2000. The former is challenged on the basis of interference with the right to counsel, resulting in substantial prejudice, (Due Process), and the latter, primarily on a erroneous interpretation of the law. Should the Court sustain either challenge, the result would be that the order of March 9, 2000, [13] would be vacated, and the case remanded to the BIA with

---

[13] Vacating the earlier order would, of necessity, also void the latter one.



ClibPDF - www.fastio.com

instructions that proceedings be reopened. Once the case was reopened, Coronel could pursue both applications for relief, to wit, under prior §212(c) of the Act, and for suspension of deportation, under prior 8 U.S.C. §1254(a)(2).

It is therefore urged that the deportation orders of June 3, 1993 and March 9, 2000, be vacated, and the case be remanded to the BIA with instructions that the case be reopened for further proceedings on both of Mr. Coronel's applications for relief.

Respectfully Submitted,

Lisa S. Brodyaga, Esq.
REFUGIO DEL RIO GRANDE
17891 Landrum Park Road
San Benito, Texas 78586
(956) 421-3226
Texas Bar: 03052800
Fed. ID: 1178

CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was mailed, first-class postage prepaid, to Heather Phillips, P.O. Box 878, Ben Franklin Station, Washington, D.C. 20044, this 14th day of May, 2001.



ClibPDF - www.fastio.com