24

United States District Court
Southern District of Texas
FILED

JAN 3 0 2002

Michael N. Milby
Clerk of Court

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

FELIX CORONEL-CARDENAS,      )
INS NO. A 36-599-075         )
                             )
            Petitioner,      )    CIVIL CASE NO:  B-00-058
       v.                    )
E.M. TROMINSKI,              )    RESPONDENTS' OBJECTIONS
DISTRICT DIRECTOR AND JOHN D.)    TO THE MAGISTRATE
ASHCROFT U.S. ATTORNEY GENERAL)   JUDGE'S REPORT AND
            Respondents )         RECOMMENDATION
_____)

        Respondent respectfully objects to the Report and

Recommendation (Report) entered by the United States Magistrate

Judge (USMJ) on January 16, 2002.  See 28 U.S.C. § 636(b)(1)(C)

(2001).  The Court should decline to adopt the Report, because it

ignores the following essential facts:  (1) Coronel's due process

claims are barred by a statute of limitations; (2) the petitioner

failed to demonstrate a due process violation of his right to

counsel; and (3) in any event, petitioner could not establish

eligibility for suspension of deportation because his accrual of

time for purposes of suspension of deportation ended with the

issuance of his Order to Show Cause.  As such, the Report departs

from the weight of legal authority, and suggests an untenable

result not intended by the Supreme Court or Congress.

<u>OBJECTIONS</u>

I.   **CORONEL'S DUE PROCESS CLAIM IS BARRED BY A STATUTE OF
     LIMITATIONS**

        Coronel cannot raise a challenge to the board's 1991 and

1993 decisions because the statue of limitations has expired for those claims.  In <u>Daniels v. United States</u>, 121 S. Ct. 1578 (2001), the petitioner sought to challenge two prior state convictions which were being used for sentencing purposes in a recent federal conviction.  <u>Id</u>. at 1581.  The Supreme Court held, however, that the petitioner could not use habeas corpus to challenge those prior state convictions.  <u>Id</u>. at 1581-82.  In stating that the petitioner could not challenge the prior convictions, the Supreme Court stressed the interest in finality. <u>Id</u>. at 1582.  The Court stated:  "The premise underlying petitioner's argument - that defendants may challenge their convictions for constitutional infirmity - is quite correct." <u>Id</u>. at 1582.  The Court, however, explained that there were limitations to habeas corpus:

> Our system affords a defendant convicted in state court numerous opportunities to challenge the constitutionality of his conviction.  He may raise constitutional claims on direct appeal, in postconviction proceedings available under state law, and in a petition for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2254 (1994 ed. and Supp. V).  <u>See generally</u> 1 J. Liebman & R. Hertz, Federal Habeas Corpus Practice and Procedure § 5.1a(3d ed. 1998).  <u>These vehicles for review, however, are not available indefinitely and without limitation.  Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim</u>. <u>See</u>, <u>e.g.</u>, <u>United States v. Olano</u>, 507 U.S. 725, 731, 113 S. Ct. 1770, 123 L.Ed.2d 508

2

(1993) ("'<u>No procedural principle is more
familiar to this Court than that a
constitutional right . . . may be forfeited
in criminal as well as civil cases by the
failure to make timely assertion of the right
before a tribunal having jurisdiction to
determine it</u>'" (quoting <u>Yakus v. United
States</u>, 321 U.S. 414, 444, 64 S. Ct. 660, 8
L.Ed. 834 (1994))). One of the principles
vindicated by these limitations is a
"presumption deeply rooted in our
jurisprudence: the 'presumption of
regularity' that attaches to final judgments,
even when the question is waiver of
constitutional rights." [<u>Parke v. Raley</u>, 506
U.S. 20, 29 (1992)].

<u>Id</u>. at 1583 (emphasis added). The Court went on to conclude that

the petitioner, by failing to take advantage of direct review of

his prior convictions, forfeited his constitutional claims

regarding those prior convictions. <u>Id</u>. at 1584.

Coronel was required to file an appeal of the BIA's February

7, 1991 decision finding that "the record [lacks] evidence of due

process violations in the respondent's case," A.R. 110, "not

later that 90 days after the date of the issuance of the final

deportation order." INA § 106(a)(1), 8 U.S.C. § 1105a(a)(1)

(1990). The Supreme Court has also instructed that time

limitations on judicial review constitute statutes of limitation.

<u>Weinberger v. Salfi</u>, 422 U.S. 749, 764 (1975). "Judicial review

provisions . . . are jurisdictional in nature and must be

construed with strict fidelity to their terms." <u>Stone v. INS</u>,

514 U.S. 386, 405 (1995). Coronel failed to seek timely review,

3

instead waiting to file his motion to reconsider with respect to
his application for 212(c) relief over 1½ years later, on
November 24, 1992.  As a result, Coronel's reliance on <u>Pierre v.</u>
<u>INS</u>, 932 F.2d 418 (5th Cir. 1991) is misplaced, as Coronel failed
to file his motion to reconsider within the statutory period to
seek judicial review of a BIA decision.  Coronel did not file a
petition for review within ninety days.  His failure to do so is
a failure to comply with a statute of limitations, and his claims
are therefore subject to procedural default from which no habeas
corpus lies.  <u>See</u> <u>Daniels</u>, 121 S. Ct. at 1582.  Thus, no habeas
jurisdiction exists for his procedurally defaulted claim.

## II.  RESPONDENT OBJECTS TO THE REPORT'S ANALYSIS OF PETITIONER'S DUE PROCESS CLAIM

This Court should decline to adopt the USMJ's Report,
because it improperly disregards both important legal precedent
governing claims of due process violations, as well as the BIA's
treatment of petitioner's claims.

First, the Report's recommendation that the case be remanded
to the BIA with instructions to address the issue of a fair
hearing and right to counsel ignores the fact that to establish a
violation of a right to counsel in a deportation proceeding, an
alien must show:  1) ineffective representation/denial of
representation; and 2) substantial prejudice which occurred as a
result of the ineffective representation.  <u>Ogbemudia v. INS</u>, 988
F.2d 595, 598 (5th Cir. 1993); <u>Prichard-Ciriza v. INS</u>, 978 F.2d

4

219, 222 (5th Cir. 1992) (plaintiff must demonstrate prejudice which implicates the fundamental fairness of the proceeding). Contrary to the USMJ's finding that "there is a serious question whether Petitioner received a right to a fair hearing," Report at 6, Coronel has not shown that the immigration judge "tricked" him into waiving counsel. Pet. for Habeas Corpus at 2. Neither has Coronel shown, nor can he show, prejudice stemming from any alleged conversation and/or assurances given by the immigration judge off the record, regardless of whether these caused him to waive his right to counsel. Finally, there is no constitutional violation in the denial of purely discretionary relief, such as a waiver of deportation pursuant to former INA § 212(c), 8 U.S.C. § 1182(c). Finlay v INS, 210 F.3d 556 (5th Cir. 2000). The failure to apply for purely discretionary relief does not implicate the right to counsel. Mejia-Rodriguez v. Reno, 178 F.3d 1139 (11th Cir. 1999). Further, the failure to receive relief that is purely discretionary in nature does not amount to a deprivation of a liberty interest. Connecticut Bd. of Pardons v. Dumschat, 452 U.S. 458, 465 (1981). Therefore, there has been no due process violation of Coronel's right to counsel in his deportation proceeding.

A.   The Record Fails to Support Coronel's Contention that he was Tricked into Waiving Counsel

Coronel has proffered no evidence supporting his allegation that he was "tricked" into waiving counsel to his detriment at

5

his hearing.  First, Coronel's Notice of Master Calendar Hearing,
which informed him of the date of his hearing before the
immigration judge, specifically provided him with notice that he
was "expected to plead to the allegations in the charging
document at this hearing [and that] [i]n addition, all
applications and motions for relief should be submitted."  A.R.
182.

Nor does the transcript of Coronel's hearing support either
his allegations of impropriety on the part of the immigration
judge, or the USMJ's suggestion that there was "confusion" about
the waiver of counsel.  Instead, the transcript reveals that the
immigration judge clearly asked Coronel whether he wanted to
obtain counsel, or whether he wished "to go forward this date and
speak for [himself]," to which Coronel replied, "[r]epresent
myself and go forward."  A.R. 175.  Contrary to the Report's
finding that, "the BIA has not fully addressed the issue of Mr.
Coronel's waiver of counsel," Report at 6, the BIA expressly
noted in its February 7, 1991 decision that, "[t]he transcript of
the hearing reveals that the respondent understood the nature of
the proceedings against him, and he does not show how he would
have benefitted by having an attorney present at the hearing."
A.R. 110.

6

**B.    Coronel Fails to Show Actual Prejudice Because he was not Eligible for Relief at the Time of the Hearing, and a Request for a Continuance Simply to Accrue Time for Eligibility is not "Good Cause" for a Continuance**

Even if Coronel had somehow been tricked into waiving counsel, as of the date of his hearing, May 18, 1987, Coronel fails to show prejudice because he admits that he was ineligible for any relief whatsoever. <u>Accord</u> Pet. for Writ of Habeas Corpus at 2, FN 1 ("At the time the Judge ordered him deported, Mr. Colonel [sic] <u>lacked a few weeks of eligibility for 212(c) relief</u>.") (emphasis added). Therefore, even if Coronel had had counsel present, a request for a continuance simply to accrue time to establish eligibility for relief is not "good cause" for a continuance. <u>See</u> 8 C.F.R. § 240.45 ("After the commencement of the hearing, the immigration judge may grant a reasonable adjournment . . . <u>for good cause shown</u>, upon application by the respondent.") (emphasis added). Because Coronel was ineligible for any relief at the time of his hearing, he was in no way prejudiced by his lack of counsel at the hearing. Therefore, Coronel cannot establish a due process violation. <u>See</u> <u>Prichard-Ciriza</u>, 978 F.2d at 222 (No violation of due process where "there is no indication that there were any grounds for relief available to Prichard <u>at the time of the deportation hearing</u> which an attorney might have brought to the IJ's Attention." (emphasis added)).

7

C.   **Coronel Fails to Show Prejudice Because the BIA Subsequently Considered Coronel's Application for Relief Pursuant to former INA § 212(c), and Determined that Coronel had Failed to Establish Prima Facie Eligibility for that Relief**

The USMJ's Report additionally fails to consider that any attempt by Coronel to demonstrate prejudice is further undermined by the fact that he obtained counsel who ultimately filed a 212(c) application and the BIA then considered Coronel's claim for relief under former INA § 212(c), 8 U.S.C. § 1182(c), and rejected it.  Following his hearing on May 18, 1987, Coronel filed an appeal with the BIA with assistance of counsel.  A.R. 168.  His chosen counsel subsequently filed a motion to reopen with the BIA based on newly accrued eligibility for 212(c) relief.  A.R. 112, 168.  The BIA reviewed his underlying § 212(c) application and accompanying affidavits and found that Coronel had failed to make "a prima facie showing that he merits this relief in the exercise of discretion."  A.R. 111.  The BIA noted that Coronel had been convicted of a drug offense, "which generally requires a showing of outstanding equities," and that Coronel had "not presented evidence of outstanding equities, or indeed, any factual allegations which might indicate that he is worthy of a favorable exercise of discretion."  Id.

Moreover, Coronel received an additional review by the BIA of his request for 212(c) relief.  On November 24, 1993, over one and a half years after the BIA's February 7, 1991 decision,

Coronel filed a motion to reconsider with the BIA requesting once again that the BIA grant his motion to reopen deportation proceedings to allow him to apply for 212(c) relief. A.R. 99. On June 3, 1993, the BIA denied Coronel's motion to reconsider. In its decision, the BIA once again evaluated whether Coronel had demonstrated not only statutory eligibility for 212(c) relief, but also whether he merited a favorable exercise of discretion, and found that Coronel had not met his burden of proof. A.R. 84. In sum, after evaluating relevant factors including Coronel's U.S. citizen wife and children, employment history, and length of residence in the U.S., the BIA found that Coronel had "failed to establish evidence of unusual or outstanding equities." Id.

Therefore, Coronel cannot establish prejudice stemming from his lack of counsel at his hearing before the immigration judge, because notwithstanding the fact that he lacked eligibility for 212(c) relief at the time of the hearing, the BIA on two occasions considered whether Coronel had established – with the assistance of counsel – prima facie eligibility for such relief and found that he had failed to do so. Due process does not require a third opportunity.

Finally, Coronel did not file a petition for review in the Fifth Circuit from the BIA's decision with respect to 212(c) relief (8 U.S.C. § 1105a(a)(1994)), or otherwise further pursue 212(c) relief with the BIA. Instead, he filed a motion to reopen

9

with the BIA on June 30, 1993, which consisted solely of a

request to apply for suspension of deportation.  A.R. 22; accord

Pet. for Writ of Habeas Corpus at 3 (Mr. Coronel filed a motion

to reopen to seek suspension of deportation.") (emphasis added).

As a result, Coronel abandoned his request for relief under

former INA § 212(c).[1]  Even if he had appealed the BIA's

determination with respect to his eligibility for 212(c) relief,

further review of the BIA's discretionary decision with respect

to Coronel's lack of outstanding equities is precluded in this

Court by IIRIRA § 309(c)(4)(E), which provides that "there shall

be no appeal of any discretionary decision under section 212(c)."

See Moosa v. INS, 171 F.3d 994 (5th Cir. 1999); Palma-Rojas v.

INS, 244 F.3d 1191 (9th Cir. 2001) (no review of discretionary

decision under 212(c)).  Moreover, a court in habeas corpus lacks

---

[1] Coronel appears to argue that the BIA's June 3, 1993
denial of his motion to reconsider should be consolidated with
the BIA's March 9, 2000 denial of his motion to reopen for
purposes of seeking judicial review over any and all issues
presented in these separate motions.  See Pet. for Writ of Habeas
Corpus at 3 (referring to Pierre v. INS, 932 F.2d 418 (5th Cir.
1991), overruled by Stone v. INS, 115 S.Ct. 1537 (1995)).
However, Pierre is inapposite, because it dealt with an appeal to
the BIA and subsequent motion to reconsider that both involved
the same issues - whether the alien in that case had established
eligibility for withholding of deportation and/or asylum.  In
this case, Coronel's motion to reconsider involved his
application for 212(c) relief, for which the BIA found him
ineligible, while his subsequent motion to reopen involved a
totally different ground of relief, suspension of deportation
under former INA § 1254(a)(2).  Consequently, Coronel abandoned
his request for relief under 212(c) when he failed to file a
petition for review from the BIA's finding that he was ineligible
for such relief.

jurisdiction to entertain discretionary challenges.  <u>Cf.</u> <u>Calcano-Martinez v. INS</u>, 121 S.Ct. 2268, 2270.n.2 (2001).

## III. RESPONDENT OBJECTS TO THE REPORT'S DECISION NOT TO THE ADDRESS THE ISSUE OF PETITIONER'S LACK OF ELIGIBILITY FOR SUSPENSION OF DEPORTATION

In his report, the USMJ declined to address the Board's finding that petitioner lacked eligibility for suspension of deportation under former 8 U.S.C. § 1254(a)(2) and former INA § 212(c).  Report at 3.  In so doing, the USMJ ignored that fact that Coronel is ineligible for suspension of deportation because his accrual of time towards the requisite physical presence ended with the issuance of his order to show cause.

In its March 9, 2000 decision, the BIA correctly found that "service of the Order to Show Cause ends the period of continuous physical presence for purposes of suspension of deportation," and that Coronel was therefore ineligible for relief.  A.R. 2.  <u>See</u> <u>Gonzalez-Torres v. INS</u>, 213 F.3d 899, 903 (5th Cir.2000).  As the BIA noted, "inasmuch as the respondent entered the United States in July of 1980, committed the drug offense April 7, 1983,"[2] and

---

[2] It is unclear how the BIA arrived at this date, as Coronel's OSC indicates that he was convicted of his crime on April 27, 1983, A.R. 184, and actually committed the crime on January 21, 1983.  A.R. 151.  At any rate, any error is harmless, given that as Coronel's OSC was filed in 1987, and he entered the United States in 1980, it is factually impossible for him to have accrued ten years' physical presence after his conviction and prior to the filing of the OSC.  Therefore, under IIRIRA § 309(c)(5), Coronel is ineligible for suspension of deportation. <u>See</u> Part II-A below.

the OSC "was filed with the Immigration Court April 17, 1987,"
Coronel lacked the 10 years of continuous physical presence
required for suspension of deportation under the provisions of
former INA § 244(a)(2).  Id.

A.  **The Plain Language of IIRIRA § 309(c)(5)(A) Calls for the Stop-Time Rule of 240A(d)(1) to Apply to Coronel's OSC**

IIRIRA replaced former suspension of deportation relief
found at INA § 244(a)(2), 8 U.S.C. § 1254(a)(2) (1994), with a
new form of relief called cancellation of removal.  See INA 240A,
8 U.S.C. § 1229b (Supp. 1997).  The IIRIRA amendments were
intended to limit the categories of aliens eligible for such
relief and to limit the circumstances under which relief may be
granted.  Id.  For example, under INA 240A, aliens face a longer
physical presence requirement, a more stringent standard of
hardship, and omission of consideration of hardship to the aliens
themselves.  Id.

Coronel appears to argue that while the stop-time rule of
INA § 240A may apply to applications for suspension of
deportation under former 8 U.S.C. § 1254(a)(1) involving non-
criminal aliens, Congress did not intend to apply this harsh rule
to criminal aliens applying for suspension of deportation under
former 8 U.S.C. § 1254(a)(2).  Pet. Mot. for Summ. Judge. at 5-
10.  Not only is this argument - that Congress would choose to
treat criminal aliens more leniently than non-criminal aliens -

12

nonsensical, the plain language of the relevant statute holds otherwise.  Instead, with respect to suspension of deportation under both former 8 U.S.C. § 1254(a)(1) & (2), and under the transition rules imposed by IIRIRA § 309(c)(5)(A), the accrual of time for purposes of the physical presence requirement terminates with the issuance of the OSC.

First, IIRIRA § 309(c)(5)(A) expressly provides "paragraphs (1)and (2) of section 240A(d) of the Immigration and Nationality Act (relating to continuous residence or physical presence) shall apply to orders to show cause . . . issued before, on, or after the date of the enactment of this Act" (emphasis added). Notably, IIRIRA § 309(c)(5)(A) does not state that the guidelines related to calculating continuous physical presence found in 240A(d) shall apply to criminal convictions, but rather only applies these guidelines to the orders to show cause of those aliens requesting suspension of deportation under former 8 U.S.C. § 1254(a)(1) & (2).

Turning then, to INA § 240A(d), that provision provides - with respect to orders to show cause - that "any period of continuous residence or continuous physical presence in the United States shall be deemed to end when the alien is served [an order to show cause]."  Additionally, the continuous physical presence clock does not start anew after the service of an order to show cause so as to allow an alien to accrue the time required

13

to establish eligibility for suspension of deportation subsequent to the service of an order to show cause.  Mcbride v. INS, 238 F.3d 371 (5th Cir. 2001).

Coronel's suggestion that the Board is mistaken in applying INA § 240A(d) to INA § 244(a)(2) is not well taken.  IIRIRA § 309(c)(5)(A) does not limit the stop-time rule's application to INA § 244(a)(1).  Quite the contrary, 240A(d)(1) says that it applies to "any period" of physical presence.  That includes former INA § 244(a)(2).

Indeed, Coronel's case demonstrates exactly how Congress intended the stop-time rule to operate.  Although under former 8 U.S.C. § 1254(a)(2), Coronel began to accrue time towards continuous physical presence following his conviction on April 29, 1983, that accrual of time ended with the filing of his OSC on April 17, 1987.  As such, Coronel lacked the requisite physical presence necessary to establish eligibility for suspension of deportation.[3]

---

[3] Alternatively, given Congress' intention to curtail relief for criminal aliens such as Coronel, see Part II-A above, it is entirely possible that "no-one would ever qualify for relief under § 1254(a)(2)."  Pet. Mot. for Summ. Judge. at 8.  That is, Congress intended to cut off suspension of deportation relief for criminal aliens such as Coronel be stopping the accrual of time before it could even begin.  Given Congress' intention in revising the immigration laws, this would in no way be an "absurd" result, as Petitioner claims.  Id.

14

B.   **Rather than Leading to Absurd Results, the Board's Interpretation Serves Congress' Intent to Limit Relief for Criminal Aliens Such as Coronel**

In addition, the immigration reforms implemented by IIRIRA were designed to remove the incentive for aliens to prolong their cases by ending the accrual of time in residence for suspension of deportation when deportation proceedings were commenced. The legislative history reflects that Congress was displeased with the ability of aliens to protract the deportation hearing process and thereby accrue time that could be counted toward satisfaction of the continuos physical presence requirement. See H.R. Rep. No. 104-469(I) (1996), available in 1996 WL 168955, at 390 (noting that "[s]uspension of deportation is often abused by aliens seeking to delay proceedings until 7 years have accrued[,] . . . even after they have been placed in deportation proceedings."). This dissatisfaction evidently led Congress to direct that the accrual of qualifying time would stop with the issuance of the notice to appear (formerly known as the order to show cause). See H.R. Rep. No . 104-879 (1997) (noting that reforms in the IIRIRA's title III included ending the "accrual of time-in-residence on the date the alien is placed into removal proceedings, thus removing the incentive for aliens to prolong their cases in the hope of remaining in the United States long enough to be eligible for relief.".

Therefore, the legislative history clearly indicates that

15

Congress intended to restrict relief for aliens such as Coronel. This legislative intent combined with a plain reading of the statutory language supports the BIA's finding that Coronel is unable to satisfy the statutory physical presence requirement now in effect, and is consequently ineligible for suspension of deportation.

### CONCLUSION

For the reasons stated here and in Respondent's prior pleadings, the Court should reject the Magistrate Judge's Report and Recommendation and dismiss this petition for a writ of habeas corpus.

Respectfully submitted,

MERVYN MOSBACKER
United States Attorney
Southern District of Texas
Lisa Putnam
Special Assistant U.S. Attorney
P.O. Box 1711
Harlingen, Texas  78551
(956) 389-7051

ERNESTO H. MOLINA
Senior Litigation Counsel
Office of Immigration Litigation

HEATHER PHILLIPS
Attorney
Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC  20044
(202) 616-9343

Date:   January 29, 2002          Attorneys for Respondent

16

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was served by first class mail upon Lisa Brodyaga, Esquire, this 29th day of January, 2002:

Lisa Brodyaga, Esquire
17891 Landrum Park Road
San Benito, Texas 78586

HEATHER R. PHILLIPS

17