

United States District Court
Southern District of Texas

**FEB 1 3 2002**

Michael N. Milby
Clerk of Court

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

FELIX CORONEL-CARDENAS,

  Petitioner,

v.

E.M. TROMINSKI,

  Respondent.

No. CA B-00-058

---

PETITIONER'S RESPONSE TO RESPONDENT'S OBJECTIONS
TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

Lisa S. Brodyaga, Esq.
Counsel For Petitioner
17891 Landrum Park Rd.
San Benito, Texas 78586
(956) 421-3226

February 12, 2002

## I.  JURISDICTION AND NATURE OF THE PROCEEDINGS

Before the Court is the Report and Recommendation of the United
States Magistrate Judge, recommending that Mr. Coronel's Petition
for Writ of Habeas Corpus be granted, and the Objections thereto of
the Respondents, (cited herein as (INS:_)).  The case at bar, like
the others in this series, [1] presents issues of first impression.
Petitioner challenges two final orders of deportation, for which
judicial review in the Circuit Court of Appeals is unavailable. [2]

Insofar as it challenges the March 9, 2000 order, Mr. Coronel's
petition, like the others in this series, falls under the
"transitional" rules of §309(c)(1) of the Illegal Immigration
Reform and Immigrant Responsibility Act, ("IIRIRA"), and is
controlled by Fifth Circuit precedent holding that IIRIRA
§309(c)(4)(G) deprives it of jurisdiction over *all* cases within its
scope, but that a remedy exists in Habeas Corpus. [3] *Lerma de Garcia
v. INS,* 141 F.3d 215 (5th Cir. 1998), reh. denied.

Insofar as Mr. Coronel challenges the June 3, 1993 denial of his
motion to reconsider, he would again note, as in his motion for
summary judgment, (herein cited as (SJ:___)), at page 2, that his

---

[1]    Mr. Coronel, like Mr. Agado, in C.A. B-99-160, and Mr.
Vargas, in B-00-100, sought suspension of deportation pursuant to
8 U.S.C. §1254(a)(2), and a waiver of deportation under 8 U.S.C.
§1182(c).  Petitioner asserts that the BIA's finding that he is
statutorily ineligible for relief derives from an error of law, and
is cognizable in Habeas Corpus.  In addition, he asserts a Due
Process violation, also appropriately raised in Habeas Corpus.

[2]   The denial of a motion to reopen deportation proceedings is
an order of deportation, and is subject to judicial
review. *See, Giova v. Rosenberg,* 379 U.S. 18 (1964).

[3]    Mr. Coronel is subject to §309(c)(4)(G), since he was
ordered deported because of a controlled substance conviction.
That relief is available in habeas corpus is further established by
*INS v. St. Cyr,* 121 S.Ct. 2271 (2001); *Calcano v. INS,* 121 S.Ct.
2268 (2001), and *Zadvydas v. Davis,* 121 S.Ct. 2491 (2001).

motion to reopen to apply for suspension of deportation was filed
on June 30, 1993, within the statutory period for seeking review of
the denial of the motion to reconsider.  Since the motion to reopen
was filed in reliance on *Pierre v. INS,* 932 F.2d 418 (5th Cir.
1991),[4] this Court also has jurisdiction over the 1993 decision
of the BIA, under *U.S. ex rel Marcello v. INS,* 634 F.2d 964, 971
(5th Cir. 1981) (habeas jurisdiction under §2241 exists to review
deportation order where there was no "deliberate bypass" of direct
review by the court of appeals).[5]  Furthermore, the Due Process
claim raised therein, and ignored by the BIA in its decision of
June 3, 1993, was also raised in Mr. Coronel's later motion to

_____

[4]    *Pierre* held that where a motion to reopen or reconsider
filed within the statutory period to seek judicial review of a BIA
decision was denied by the BIA, the Court could review both
decisions. It was overruled by *Stone v. INS,* 115 S.Ct. 1537 (1995).

[5]    Although subsequently overruled, the existence of *Pierre,*
at the time in questions, shows that there was no "deliberate by-
pass" of review of the 1993 decision within the meaning of
*Marcello.* Notably, *Marcello* was cited with approval by the Supreme
Court in *St, Cyr, supra* at 2284-85:

> The INS argues that the inclusion of that exception in
> the 1961 Act indicates that Congress must have believed
> that it would otherwise have withdrawn the pre-existing
> habeas corpus jurisdiction in deportation cases,  and
> that, as a result, the repeal of that exception in AEDPA
> in 1996 implicitly achieved that result.   It seems to
> us, however, that the 1961 exception is best explained as
> merely confirming the limited scope of the new review
> procedures.    In fact, the 1961 House Report provides
> that this section "in no way disturbs the Habeas Corpus
> Act."  [FN32] H.R.Rep. No. 1086, 87th Cong., 1st Sess.,
> 29 (1961).    Moreover, a number of the courts that
> considered the interplay between the general habeas
> provision and INA § 106(a)(10) after the 1961 Act and
> before the enactment of AEDPA did not read the 1961 Act's
> specific habeas provision as supplanting jurisdiction
> under § 2241. Orozco v. INS, 911 F.2d 539, 541 (C.A.11
> 1990);  United States ex rel. Marcello v. INS, 634 F.2d
> 964, 967 (C.A.5 1981);  Sotelo Mondragon v. Ilchert, 653
> F.2d 1254, 1255 (C.A.9 1980).

reopen, and likewise ignored in the BIA's March 9, 2000, decision.

Jurisdiction under 28 U.S.C. §2241 covers errors of statutory construction, as well as constitutional claims. *St. Cyr, supra.*

## II.  REPLY TO THE OBJECTIONS RAISED BY INS

**A.  THERE IS NO "STATUTE OF LIMITATIONS" ON A DUE PROCESS CLAIM IN THE CONTEXT OF A FINAL ORDER OF DEPORTATION.**

**B.  ALTHOUGH HE DID NOT EXPLICITLY ADDRESS THE ISSUE OF PREJUDICE, THE MAGISTRATE CORRECTLY ANALYZED MR. CORONEL'S DUE PROCESS CLAIM.**

**1.  REGARDLESS OF WHETHER HE WAS INTENTIONALLY "TRICKED" INTO WAIVER COUNSEL, THE RECORD ESTABLISHES, AS THE MAGISTRATE JUDGE FOUND, THAT HIS WAIVER OF COUNSEL WAS NOT "UNDERSTANDINGLY MADE," AS REQUIRED BY BIA PRECEDENT.**

**2.  THE RECORD ESTABLISHES THAT MR. CORONEL SUFFERED SUBSTANTIAL PREJUDICE BY THE DENIAL OF COUNSEL, IN THAT THE RESULT WOULD LIKELY HAVE BEEN DIFFERENT IF THE JUDGE HAD CONTINUED PROCEEDINGS TO PERMIT HIM TO SEEK COUNSEL.**

**a.  THE ISSUE IS NOT, AS CLAIMED BY INS, WHETHER ACCRUING TIME FOR RELIEF WAS "GOOD CAUSE" FOR A CONTINUANCE, BUT WHETHER THE IMMIGRATION JUDGE SHOULD HAVE GRANTED A CONTINUANCE SO THAT HE COULD SEEK AN ATTORNEY: THE TIMING QUESTION IS PERTINENT ONLY TO MR. CORONEL'S SHOWING OF PREJUDICE.**

**b.  THE POINT IS NOT WHETHER MR. CORONEL ESTABLISHED THE REQUIRED LEVEL OF EQUITIES IN HIS PLEADINGS TO THE BIA, BUT WHETHER HE COULD NOT HAVE SHOWN SUCH EQUITIES IN AN EVIDENTIARY HEARING, WHERE FACTS RELATING TO HARDSHIP AND REHABILITATION COULD HAVE BEEN FULLY DEVELOPED**

**C.  THERE IS NO NEED TO ADDRESS THE QUESTION OF ELIGIBILITY FOR RELIEF UNDER FORMER 8 U.S.C. §1254(a)(2), WHERE THE FINDING THAT MR. CORONEL DID NOT "UNDERSTANDINGLY" WAIVE HIS RIGHT TO COUNSEL OF NECESSITY VOIDS ALL SUBSEQUENT ORDERS OF THE BIA, INCLUDING THAT IN WHICH THE BOARD FOUND HIM INELIGIBLE FOR SAID RELIEF.**

**1. GIVEN THE MAGISTRATE JUDGE'S FINDINGS ON MR. CORONEL'S COUNSEL CLAIM, IT IS NOT NECESSARY TO ADDRESS THE ISSUE UNDER §1254(a)(2) AT THIS TIME.**

**2. SHOULD THE COURT CHOOSE TO REACH THAT ISSUE, IT IS SUBMITTED THAT, AS CONCLUDED IN THE RELATED CASE, THE BIA ALSO ERRED IN ITS INTERPRETATION OF THE "STOP TIME" RULE.**

## III. ARGUMENT

### A. THERE IS NO "STATUTE OF LIMITATIONS" ON A DUE PROCESS CLAIM IN THE CONTEXT OF A FINAL ORDER OF DEPORTATION.

INS first argues that Mr. Coronel's Due Process claim is barred by a "statute of limitations," (INS:1-4). However, INS fails to identify any such statute, applicable to review of final orders of deportation, under 28 U.S.C. §2241. In support of this claim INS cites *Daniels v. United States,* 121 S.Ct. 1578 (2001). Said case is far wide of the mark. In *Daniels*, the petitioner was convicted of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), and his sentence was enhanced under the Armed Career Criminal Act of 1984, 18 U.S.C. § 924(e), which imposes a mandatory minimum sentence on anyone who violates §922(g)(1) and has three previous convictions for, *inter alia,* a violent felony. Daniels had four such prior state convictions. After an unsuccessful direct appeal, he filed a motion to vacate, set aside, or correct his federal sentence pursuant to 28 U.S.C. §2255. He asserted that his sentence violated the Constitution because it was based in part on two prior convictions that were themselves unconstitutional. The Court concluded that because he failed to pursue remedies that were otherwise available to him to challenge his prior convictions while he was in custody on those convictions, he could not use a §2255 motion, directed at his federal sentence, to collaterally attack those convictions. It was in that context that the Court utilized the language quoted by INS, at (INS:2-3).

4

As Mr. Coronel previously explained, [6] (and as INS has chosen to
ignore), he did not file a petition for review of the June 3, 1993
denial of his motion to reconsider, because his motion to reopen to
apply for suspension of deportation was filed on June 30, 1993,
within the statutory period for seeking review of the denial of the
motion to reconsider.   Since the motion to reopen was filed in
reliance on *Pierre v. INS,* 932 F.2d 418 (5th Cir. 1991), [7]  this
Court also has jurisdiction over the 1993 decision of the BIA,
under *Marcello, supra* at 971, holding that habeas jurisdiction
under §2241 exists to review deportation order where there was no
"deliberate bypass" of direct review by the court of appeals. [8]

Furthermore, as was also previously explained, (at SJ:2), and as
INS has chosen to overlook, the Due Process claim was also raised
in Mr. Coronel's later motion to reopen, and likewise ignored in
the BIA's March 9, 2000, decision.

INS' claim, (INS:10), that Mr. Coronel "abandoned his request for
relief under former INA §212(c)" because he did not mention it in
his motion to reopen to seek suspension of deportation is even more
unfathomable.   The fact that he sought an alternative form of
relief does not mean that he had abandoned his former claims, and
INS cites no authority to the contrary.  And the assertion that his
claim is barred by IIRIRA §309(c)(4)(E) is patently frivolous.

---

[6]  See, (SJ:2).

[7]   *Pierre* held that where a motion to reopen or reconsider
filed within the statutory period to seek judicial review of a BIA
decision was denied by the BIA, the Court could review both
decisions. It was overruled by *Stone v. INS,* 115 S.Ct. 1537 (1995).

[8]  The existence of *Pierre*, at that time, shows that there was
no "deliberate by-pass" of review of the 1993 decision within the
meaning of *Marcello*.   INS mis-characterizes the significance of
*Pierre*.  Mr. Coronel does not rely on *Pierre per se,* as INS claims,
(INS:4), but on *Marcello*, which INS does not even mention.

5

Said provision applies only to an actual exercise of discretion, not to Due Process claims in the denial of counsel. *See, Requena-Rodriguez v. INS,* 190 F.3d 299, 305 (5th Cir. 1999):

> The transitional provisions in IIRIRA §§ 309(c)(4) declare only that "there shall be no *appeal* " of decisions about discretionary relief or in criminal aliens' cases. IIRIRA §§ 309(c)(4)(E), (G), 110 Stat. 3009-626 (emphasis added). These provisions refer to direct appeals to the circuit courts, *see Lerma de Garcia,* 141 F.3d at 216-17, rather than to habeas jurisdiction in the district courts.

In this context, INS' citation to *Calcano v. INS*, 121 S.Ct. 2268,2270,n.2 (2001) is so egregiously misleading that it is difficult to believe that it could have been made in good faith. The whole point of *INS v. St. Cyr*, *supra*, was that statutory and constitutional errors resulting in the deprivation of the opportunity to *request* such relief are cognizable in habeas corpus. At best, INS' argument can be construed as meaning that, had Mr. Coronel been granted the opportunity to seek §212(c) relief, and, had said relief been denied in the exercise of discretion, he would not have been able to obtain review of that denial. But that is not the posture of the case, so said argument is irrelevant.

## B. ALTHOUGH HE DID NOT EXPLICITLY ADDRESS THE ISSUE OF PREJUDICE, THE MAGISTRATE CORRECTLY ANALYZED MR. CORONEL'S DUE PROCESS CLAIM.

INS also asserts, (INS:5), that:

> Coronel has not shown that the immigration judge "tricked" him into waiving counsel. ... Neither has Coronel shown, nor can he show, prejudice stemming from any alleged conversation and/or assurances given by the immigration judge off the record, regardless of whether these caused him to waive his right to counsel. Finally, there is no constitutional violation in the denial of purely discretionary relief, such as a waiver of deportation pursuant to former INA § 1182(c). <u>Finlay v.</u>

6

INS, 210 F.3d 556 (5th Cir. 2000).

This last assertion is so clearly frivolous, following *INS v. St. Cyr, supra,* [9] that it will not be addressed further.

**1. REGARDLESS OF WHETHER HE WAS INTENTIONALLY "TRICKED" INTO WAIVER COUNSEL, THE RECORD ESTABLISHES, AS THE MAGISTRATE JUDGE FOUND, THAT HIS WAIVER OF COUNSEL WAS NOT "UNDERSTANDINGLY MADE," AS REQUIRED BY BIA PRECEDENT.**

Although formulated in terms of whether or not Mr. Coronel was "tricked" into waiving counsel, [10] INS in essence challenges the Magistrate Judge's finding that Mr. Coronel's waiver of counsel was not "understandingly made," as required, *inter alia,* by *Matter of Gutierrez,* 16 I&N Dec. 226 (BIA 1997). As held therein, *id.* at 228:

> The right to counsel outlined in 8 C.F.R. 242.10 may be
> waived by the alien. Millan-Garcia v. INS, 343 F. 2d 825
> (9 Cir.1965); Dentico v. INS, 280 F.2d 71 (2 Cir. 1960);
> see Appleman, I., 'Right to Counsel in Deportation
> Proceedings,' 14 San Diego L.R. 130 (1976). However,
> since the right to counsel is an important right often
> essential to the fundamental fairness of a hearing,
> meticulous care must be exercised to insure that a waiver
> of this right is competently and understandingly made.
> De Souza v. Barber, 263 F. 2d 470 (9 Cir.), cert. denied
> 359 U.S. 989 (1959); Bridges v. Wixon, 326 U.S. 135
> (1945). It is the duty of the immigration judge to insure
> that a waiver of the right to counsel is competently and
> understandingly made. Kovac v. INS, 407 F.2d 102 (9 Cir.

---

[9] In *St. Cyr,* the Supreme Court engaged in "creative" statutory analysis to avoid constitutional problems in the denial of the opportunity to apply for §212(c) relief. *Finlay* pre-dated *St. Cyr,* and, even if it stood for the proposition for which it is cited by INS, can no longer be considered good law.

[10] The Magistrate Judge did not find that Mr. Coronel had been "tricked," nor is such a showing required. Rather, the Magistrate found, (R&R:6), and the record supports the finding that he "did not understand the proceedings;" that he demonstrated "confusion and shock" when the Immigration Judge informed him that he could not apply for relief, and that the transcript "exemplifies the confusion of the immigration and Mr. Coronel."

1969); U.S. ex rel. Castro-Louzan v. Zimmerman, 94 F.Supp. 22 (E.D.Pa. 1950). The criteria for determining whether the right to counsel has been competently waived are identical to those employed to determine the competency of a confession. Murgia-Melendrez v. INS, supra. Therefore, in assessing the competency of a waiver of the right to counsel, the respondent's age, intelligence, education and ability to comprehend must be considered. Murgia-Melendrez v. INS, supra.

The Magistrate's finding that Mr. Coronel's waiver of counsel did not meet this standard is fully supported by the record. In fact, INS does not challenge this finding, preferring to focus on its contention that Mr. Coronel was not "tricked." [11] Therefore, the finding that Mr. Coronel's waiver was not "understandingly made" must be taken as established. *Douglass v. United States Automobile Association,* 79 F.3d 1415 (5th Cir. 1996).

> **2. THE RECORD ESTABLISHES THAT MR. CORONEL SUFFERED SUBSTANTIAL PREJUDICE BY THE DENIAL OF COUNSEL, IN THAT THE RESULT WOULD LIKELY HAVE BEEN DIFFERENT IF THE JUDGE HAD CONTINUED PROCEEDINGS TO PERMIT HIM TO SEEK COUNSEL.**

INS also asserts, (INS:4), that the Magistrate erred in not addressing this aspect of the case. In this, INS is half correct, and Mr. Coronel urges that this Honorable Court make explicit the Magistrate's implicit finding in this regard.

---

[11] Even the BIA did not find that Mr. Coronel knowingly waived his right to counsel. As the Magistrate emphasized, and as is all but conceded by INS, (INS:6), the Board jumped from the question of whether Mr. Coronel "understood the nature of the proceedings against him," (i.e., that he was in deportation proceedings), to an assertion that he did not "show how he would have benefitted by having an attorney present at the hearing." (AR:11). However, as discussed below, this states the issue. This is not a case where, as in *Batanic v. INS,* 12 F.3d 662 (7th Cir. 1993), an attorney appeared, but was not allowed to attend the hearing. Rather, the error was that Mr. Coronel was not given an opportunity to **obtain** counsel. And he has clearly shown prejudice from the failure of the Immigration Judge to afford him that opportunity, which, as all concede, is an essential element of a fair hearing.

**a.   THE ISSUE IS NOT, AS CLAIMED BY INS, WHETHER ACCRUING TIME FOR RELIEF WAS "GOOD CAUSE" FOR A CONTINUANCE, BUT WHETHER THE IMMIGRATION JUDGE SHOULD HAVE GRANTED A CONTINUANCE SO THAT HE COULD SEEK AN ATTORNEY: THE TIMING QUESTION IS PERTINENT ONLY TO MR. CORONEL'S SHOWING OF PREJUDICE.**

INS' claim that Mr. Coronel did not demonstrate prejudice suffers from the same infirmity as its claim that he was improperly deprived of his right to counsel. In both instances, INS misstated the issue. The point is not whether Mr. Coronel was prejudiced by the denial of his motion for a continuance, *per se*. Rather, it is whether he was prejudiced by the fact that his waiver of counsel was not "understandingly" made. In this regard, as previously shown, the question is whether the result would likely have been different if Mr. Coronel's right to counsel had not been abridged.

The answer is clearly affirmative. Had the Judge revisited the counsel issue, after he realized that he had mistakenly informed Mr. Coronel that he was eligible to seek §212(c) relief, and Mr. Coronel had **relied** on that representation in deciding to waive counsel **for that hearing and that hearing only**, Mr. Coronel would have requested a continuance **to seek counsel**. And by the time the hearing resumed, with counsel, Mr. Coronel would clearly have been eligible for relief. This is the prejudice he asserted, and INS does not deny that this would have been the case.

Rather, INS appears to argue that this is irrelevant, citing, at (INS:7), *Prichard-Ciriza*, 978 F.2d 219,222 (5th Cir. 1992):

> The IJ repeatedly informed Prichard of his right to be represented by counsel, repeatedly ascertained that Prichard had received and had a chance to review the list of persons and organizations providing free or low-cost legal assistance, and repeatedly asked Prichard if he needed a postponement in order to secure counsel. [FN5]

9

> Furthermore, there is no indication that there were any grounds for relief available to Prichard *at the time of the deportation hearing* which an attorney might have brought to the IJ's attention. ...
>
> FN5. The first two factors, alone, were sufficient to satisfy the "fundamental fairness" requirement in *Cobourne v. INS,* 779 F.2d 1564 (11th Cir.1986).

*Prichard* was not a case where the individual was improperly deprived of the right to counsel. Indeed, the Fifth Circuit cited *Cobourne,* for the proposition that if the waiver was knowing and voluntary, the fact that the person might have suffered "prejudice" from the absence of counsel is irrelevant. Therefore, any inference would be *dicta,* that because *Prichard* was not eligible for relief at the time of the hearing, he did not suffer prejudice.

Moreover, the whole point of all these cases, and of the Magistrate Judge's Report and Recommendation, is to ensure that the immigrant had a **fair hearing.** Mr. Coronel clearly did not. One can have a fair hearing, if he "competently and understandingly" waives counsel, even if he thereby waives a known form of relief. [12] But one has not had a fair hearing where the waiver was not understandingly made, and the result would probably have been different, had the unknowing waiver not occurred.

Here, it is uncontested that, had the Judge not misinformed Mr. Coronel that he was eligible for §212(c) relief, and would have another hearing, at which he could bring an attorney, he would never have waived counsel. And, by the time he returned, with counsel, he would have been eligible for relief. His reliance on

---

[12] In order for the waiver to be competent and understanding, the eligibility for relief would have to be known: otherwise, the waiver could hardly be called "understanding." *See, Partible v. INS,* 600 F.2d 1094 (5th Cir. 1979).

the incorrect statement of the Immigration Judge set in motion a chain of events, resulting in a final order of deportation. **"All for the want of a horseshoe nail."** [13]

It is correct, however, that the United States Magistrate did not explicitly mention prejudice, although it is *implicit* in his finding that Mr. Coronel may not have received a "fair hearing," since showing prejudice is an element of such a finding. And Mr. Coronel urges this Court to correct that oversight.

> **b.    THE POINT IS NOT WHETHER MR. CORONEL ESTABLISHED THE REQUIRED LEVEL OF EQUITIES IN HIS PLEADINGS TO THE BIA, BUT WHETHER HE COULD NOT HAVE SHOWN SUCH EQUITIES IN AN EVIDENTIARY HEARING, WHERE FACTS RELATING TO HARDSHIP AND REHABILITATION COULD HAVE BEEN FULLY DEVELOPED**

INS also asserts, (INS:8-9), that Mr. Coronel has not shown prejudice because the BIA found that, in his motion to remand, he did not establish the threshold level of equities to merit §212(c) relief.  He disputes this finding of the Board, [14] although he

_____

[13]    Furthermore, defenses were available to the charge of deportability, which counsel could have raised, such as the fact that Mr. Coronel had been sentenced under a state rehabilitative statute.  *See, Matter of Manrique*, 21 I&N Dec. 58 (BIA 1995) (any alien who afforded rehabilitative treatment pursuant to a state statute will not be deported if he would have been eligible for federal first offender treatment under 18 U.S.C. §3607(a).

[14]    The Board failed to note that such strong family ties in and of themselves constitute "outstanding" equities. *See, e.g.*, *Matter of Arai*, 13 I&N Dec. 494,496 (BIA 1970) ("Where adverse factors are present in a given application, it may be necessary for the applicant to offset these by a showing of unusual or even outstanding equities.  Generally, favorable factors such as family ties, hardship, length of residence in the United States, etc., will be considered as countervailing factors meriting favorable exercise of administrative discretion."). *See also, Matter of Rodarte-Espinoza*, 21 I&N Dec. 150, 151 (BIA 1995) (Alien who married a U.S. citizen *after* deportation hearing, had one USC child

11

acknowledges that his counsel submitted only a skeletal motion, and did not fully develop his equities. However, the fact that he did not fully demonstrate his equities in that motion does not mean that he would not have been able to do so in a merits hearing on his §212(c) application before an Immigration Judge.

The single most important equity in gaining such relief is a showing of rehabilitation. *See, Diaz-Resendez v. INS,* 960 F.2d 493, 496 (5th Cir. 1992):

> Although it is not an absolute prerequisite, an applicant with a criminal record will ordinarily be required to make a showing of rehabilitation before section 212(c) relief will be granted.

*See also, Matter of Roberts,* 20 I&N Dec. 294, 299 (BIA 1991):

> With respect to the issue of rehabilitation, a section 212(c) waiver applicant who has a criminal record will ordinarily be required to present evidence of rehabilitation before relief is granted as a matter of discretion.

A second important equity, and one which is equally difficult to establish on a "paper record," is hardship to a U.S. citizen spouse and minor children. *See, Diaz-Resendez, supra* at 497 (internal citations omitted):

> Diaz-Resendez also contends that the Board failed to consider some of his favorable equities when deciding whether his equities rose to the level of unusual or outstanding. He contends that the Board overlooked factors including the imminent breakup of his marriage if he were deported, the fact that his children would be left fatherless, and the severe economic hardship that the family would incur.

---

and another on the way, four LPR siblings, and thirteen years as an LPR, showed unusual or outstanding equities, even for purpose of *reopening* proceedings).

The Board considered some but not all of the relevant factors. The Board must do more than just refer to relevant factors in passing. We previously have held in the context of 8 U.S.C. s 1254(a)(1) discretionary deportation cases, that the Attorney General or his delegates "must actually consider 'the facts and circumstances respecting each petitioner's claim of extreme hardship.' " ... Similarly, we have held that "[t]he Board's decision must reflect that it has meaningfully addressed and reached a reasoned conclusion on the alien's specific assertions of hardship that are based on evidence." ...Although the Board has no duty to write extensively on every issue, the record herein does not reflect that the Board actually considered or meaningfully addressed Diaz-Resendez' assertions of hardship.

Therefore, even assuming, *arguendo*, that the Board correctly concluded that Mr. Coronel did not make such a showing in his motion to remand, (as he did, for example, in his motion to reopen to apply for suspension), that does not establish that he could not have done so before the Immigration Judge. To the contrary, the fact that he **did** develop these equities, including rehabilitation and hardship, in his later motion, demonstrates that he would have been able to do so if he had been afforded a hearing before the Immigration Judge on his request for §212(c) relief.

## C. THERE IS NO NEED TO ADDRESS THE QUESTION OF ELIGIBILITY FOR RELIEF UNDER FORMER 8 U.S.C. §1254(a)(2), WHERE THE FINDING THAT MR. CORONEL DID NOT "UNDERSTANDINGLY" WAIVE HIS RIGHT TO COUNSEL OF NECESSITY VOIDS ALL SUBSEQUENT ORDERS OF THE BIA, INCLUDING THAT IN WHICH THE BOARD FOUND HIM INELIGIBLE FOR SAID RELIEF.

INS next complains, (INS:11), that the Magistrate Judge did not address Mr. Coronel's claim that the Board erred, as a matter of law, in concluding that the stop-time rule of IIRIRA §309(c)(5)(A) acted to stop the accumulation of physical presence at the time of the issuance of the OSC. [15]

---

[15]    INS also appears to claim, (INS:11), that Mr. Coronel is

**1. GIVEN THE MAGISTRATE JUDGE'S FINDINGS ON MR. CORONEL'S COUNSEL CLAIM, IT IS NOT NECESSARY TO ADDRESS THE "STOP-TIME" ISSUE UNDER §1254(a)(2) AT THIS TIME.**

Given the finding of the Magistrate that Mr. Coronel did not receive a fair hearing, and his recommendation that the case be remanded to the BIA, it is not necessary to reach this claim. However, should the Court chose to do so, it is respectfully submitted that, contrary to INS' assertion, under the plain language of the "stop-time" rule, it is inapplicable herein. [16]

**2. SHOULD THE COURT CHOOSE TO REACH THAT ISSUE, IT IS SUBMITTED THAT, AS CONCLUDED IN THE RELATED CASE, THE BIA ALSO ERRED IN ITS INTERPRETATION OF THE "STOP TIME" RULE.**

There are, to the best of the knowledge and belief of the undersigned, no decisions from the BIA, or any federal court, applying the "stop-time" rule to suspension applications under (former) 8 U.S.C. §1254(a)(2). And, contrary to INS' assertions, it is submitted that, as this Court found in *Agado v. Trominski, supra,* under the plain language of IIRIRA §309(c)(5)(A), the issuance of the OSC did **NOT** stop the accumulation of physical presence for these purposes. Similarly, it is urged that, since §1254(a)(2) was designed to give a chance for relief to those who had committed serious offenses, and remained trouble-free for at least ten years, Congress' reasoning in applying said rule to §1254(a)(1) applications, generally made by those who have simply

_____

not eligible for §212(c) relief. This is patently false. *See,* 8 C.F.R. §3.2(c)(1), permitting reopening of §212(c) applications for initial, or further, consideration, so long as the resident was eligible for relief prior to the entry of the BIA's order. Here, there is no question but that Mr. Coronel was eligible for such relief before the BIA dismissed his appeal.

[16] This Court so found in *Agado v. Trominski, supra.* INS did not appeal that decision, and the case is now back at the BIA for reconsideration under the correct legal standard.

14

been undocumented for an extended period in the U.S., would **NOT** apply to applications under §1254(a)(2).

In denying Mr. Coronel's motion to reopen to apply for suspension of deportation, the BIA relied on two precedent decisions: *In re Nolasco,* I.D. 3385 (BIA 1999), applying the "stop-time rule" of (new) 8 U.S.C. §1229b(d) to applications for suspension of deportation under (former) 8 U.S.C. §1254(a)(1), and *Matter of Perez,* Int. Dec. 3389 (BIA 1999), holding that 8 U.S.C. §1229b(d) applies to offenses committed prior to its enactment.

However, neither of these decisions addresses the issues presented herein.  Even assuming, *arguendo*, that the other problems of construction are overcome, [17] and that *Nolasco* correctly holds that (new) 8 U.S.C. §1229b(d) applies to applications for suspension of deportation under (former) §1254(a)(1), a very different result is produced when §1229b(d) is applied to §1254(a)(2), the section involved herein.  (Former) §1254(a)(1) requires that the applicant demonstrate seven years of continuous physical presence "immediately preceding" the application.  Moreover, it rarely involves deportability resulting from criminal convictions.  By contrast, (former) §1254(a)(2) requires a showing of ten years continuous physical presence "immediately following" the assumption of the status constituting grounds for deportation.  Frequently, as here, this is a **conviction** for a deportable offense.

(New) 8 U.S.C. §1229b(d), the so-called "stop-time rule," provides, in relevant part, as follows (emphasis added):

---

[17]  Including, most notably, the fact that, by its terms, (new) 8 U.S.C. §1229b(d) applies only to applications made under that section, to wit, applications for cancellation of removal.  To date, the BIA has not addressed this issue.

**For purposes of this section,** [8 U.S.C. §1229b], **any period of... continuous physical presence in the United States shall be deemed to end** when the alien is served a notice to appear under section 239(a) [(new) 8 U.S.C. 1229(a)] or **when the alien has committed an offense referred to in section 212(a)(2)** [8 U.S.C. §1182(a)(2)] that renders the alien... removable from the United States under section 237(a)(2) [8 U.S.C. 1227(a)(2)] ... **whichever is earliest.**

In *Nolasco*, (as in virtually all suspension applications under §1254(a)(1)), no criminal offense was involved. Consequently, the "earliest" of the events described in §1229b(d) was the service of the charging document. Therefore, the applicant in *Nolasco* needed seven years physical presence prior to filing the application, but the time stopped running with the service of the OSC. [16]

By contrast, applicants for suspension under §1254(a)(2) must show ten years physical presence **after the conviction** for a deportable offense. Under §1229b(d), accrual of physical presence terminates with the "earliest" of the events described therein. In the case of an applicant deportable for a specified conviction, this would be the **commission** of the offense. In other words, the accrual of physical presence (for purposes of §1254(a)(1)) terminates before it commences, (for purposes cf §1254(a)(1)).

A holding that, for purposes of §1254(a)(2), physical presence continues to accrue when the offense is committed, and ceases only when the OSC is served, contravenes the clear mandate of §1229b(d), (by ignoring the phrase, "whichever is earliest"). It would also

---

[16] This construction essentially reads the term "immediately" out of 8 U.S.C. §1254. Applications for suspension of deportation can only be made to the Immigration Court, and cannot be filed prior to the service of the OSC. By definition, therefore, there will be a "gap" between the point where time ceases to accrue, and when the application is filed.

render (prior) §1254(a)(2) inoperative: by definition, no one could accrue ten of years physical presence **following** a given conviction, if the clock stopped running when the offense was committed!

Nor is this result affected by the amendments made by the Nicaraguan Adjustment and Central American Relief Act, ("NACARA"), adding the issuance of Orders to Show Cause to the issuance of Notices to Appear, as events which would terminate the accumulation of physical presence.  Here, assuming that §1229b(d) applies at all, the pertinent event terminating the accumulation of physical presence would still be the commission of the offense, not the issuance of the OSC, while by statute, the physical presence needed for relief commenced only with the subsequent conviction. [19]

*Matter of Perez, supra,* is equally inapposite.  It simply holds that (new) 8 U.S.C. §1229b(d) means what it says, to wit, that **for purposes of that section,** to wit, for purposes of applications for cancellation of removal under (new) 8 U.S.C. §1229b, physical presence ceases to occur with the commission of the act on which deportability is based, or issuance of the charging document, whichever first occurs, and that its provisions apply to offenses committed prior to enactment.  It does not purport to analyze the effect, if any, of (new) 8 U.S.C. §1229b(d) on applications for suspension of deportation under (former) 8 U.S.C. §1254(a)(2).

In later cases involving this issue, (*see, e.g., Vargas-Lazarit v. Trominski,* No. B-00-100), the BIA also cited *In re Mendoza-Sandino,* I.D. 3426 (BIA 2000), holding that, in the context of an application for suspension of deportation under §1254(a)(1), continuous physical presence, once terminated, cannot re-accrue.

---

[19]    This construction does not render the stop-time rule surplusage.  Time would cease to run when an offense was committed *for purposes of an application under 8 U.S.C. §1254(a)(1).*

Assuming *arguendo*, that for purposes of §1254(a)(1), *Mendoza-Sandino* is correct, it would contravene the plain language of §1254(a)(2) to extend it to applications brought thereunder.

If physical presence could not "re-accrue," following the occurrence of an event described in (new) §1229b(d), no-one would ever qualify for relief under §1254(a)(2). By definition, the commission of an offense always precedes the conviction for that offense, but time under §1254(a)(2) only commences to run with the conviction.  Therefore, the application herein of §1229b(d), as construed in *Mendoza-Sandino*, would "defeat the statutory scheme [and] create an absurd result," within the meaning of *White v. INS,* 75 F.3d 213,216 (5th Cir. 1996) (a statute will be applied according to its plain meaning, unless such application "would defeat the statutory scheme or create an absurd result").

This result is also consistent with the policy considerations underlying (prior) 8 U.S.C. §1254(a)(2), and §1229b(d).  In the early years following enactment of §1254(a)(2), there was a great deal of litigation as to whether the ten years of physical presence and good moral character ran from the *first* event which caused the applicant to be deportable, or from the *last* such event.  The controversy was ultimately settled in favor of the *last* event causing the immigrant to be deportable, on the grounds that the whole point of the statute was to give the immigrant a second chance, once ten years of good moral character had been shown. *Matter of Wong,* 13 I&N Dec. 427 (BIA 1969). There are also sound policy results, applicable in §1254(a)(2) cases, but not in most applications under §1254(a)(1), why the time passed after an immigrant was placed in deportation proceedings should count towards the ten years.  In many such instances, individuals with strong family ties to the United States became deportable for relatively minor offenses, and were ordered deported, but, because

18

of the hardship which their removal would cause to their families, were permitted by INS to remain for many years thereafter. [20]  The BIA itself noted in *Matter of Pena-Diaz*, 20 I&N Dec. 841 (BIA 1994) that this continued presence, with INS' acquiescence, creates certain expectations that the immigrant may remain, assuming continued good behavior, and that these expectations are cognizable as a form of hardship for purposes of suspension of deportation under (prior) 8 U.S.C. §1254(a)(2).  These considerations find no equivalent in the seven year suspension provided by §1254(a)(1).

In its decision herein, like those in the related cases, the BIA made no attempt to analyze the interaction of (new) 8 U.S.C. §1229b(d) with (prior) §1254(a)(2).  Similarly, Respondent made no attempt in the Return and Brief in Opposition to Petition For Habeas Corpus to refute the "plain language" argument, which was laid out in Mr. Colonel's Petition, at ¶¶ 8 - 14.  This silence must be taken as an admission of the merit of this claim.

Rather than address the issue, INS choose to misrepresent the statutory language.  According to INS, (INS:13):

> Turning then, to INA § 240A(d), that provision provides - *with respect to orders to show cause* - that "any period of continuous residence or continuous physical presence in the United States shall be deemed to end when the alien is served [an order to show cause]."

INS conveniently omits the remainder of the provision.  It includes not only service of orders to show cause, but, of particular

---

[20]  The case of Eleodoro Agado-Flores, No. B-99-160, illustrates this phenomenon.  Mr. Agado became a lawful permanent resident in 1972.  He was convicted of possessing a small amount of marijuana in 1975, and was ordered deported in 1976.  In 1993, he filed a motion to reopen to apply for suspension of deportation, which motion remained pending until 1999, when the BIA denied it, on the same basis as given herein. During all this time, Mr. Agado has remained in the United States, with the permission of INS.

relevance here, continues as follows:

> ... or when the alien has committed an offense referred to in section 212(a)(2) that renders the alien ... removable from the United States ... **whichever is earliest.**

The fact that INS can only support its position by misquoting the statute is a further admission that its position lacks merit.

## IV.  CONCLUSION

It is therefore urged that the Report and Recommendation of the Magistrate Judge be modified to render explicit his implicit finding that Mr. Coronel was prejudiced by the failure of the Immigration Judge to ensure that any waiver of counsel was competently and understandingly made, and, as so amended, adopt said Report and Recommendation; vacate the deportation orders of June 3, 1993 and March 9, 2000, and remand the case to the BIA for a new hearing, at which he may be represented by counsel.

Respectfully Submitted,

Lisa S. Brodyaga, Esq.
REFUGIO DEL RIO GRANDE
17891 Landrum Park Road
San Benito, Texas 78586
(956) 421-3226

## CERTIFICATE OF SERVICE

I certify that copies of the foregoing, and proposed Order, were mailed, first-class postage prepaid, to Heather Phillips, Attorney, OIL, P.O. Box 878, Ben Franklin Sta., Wash. D.C. 20044, this 13th day of February 2002.

20